| 89  465 |
| 3ap312 |
| 89  465 |
| 10ap595 |
| 89  465 |
| 16ap545 |
| 89  465 |
| f47ap475 |
| 89h 465 |
| 51ad540 |

MERCANTILE SAFE DEPOSIT COMPANY, Respondent, *v.* COLLIS P. HUNTINGTON and Others, as Executors, etc., of MARTHA COLTON, Deceased, Respondents; CAROLINE COLTON MARTIN and Another, as Administrators, etc., of ABIGAIL R. COLTON, Deceased, Appellants.

*Possession of a deed of gift by the grantee — its delivery presumed therefrom — safe deposit box rented in two names — joint ownership of its contents and right of survivorship not presumed therefrom — gift inter vivos.*

In the absence of other proof, the finding of a deed in the possession of the grantee named therein is reasonably strong evidence that it had been delivered.

One Martha Colton deposited a box in a compartment in the vault of a safe deposit company, which was rented in the name of Miss Martha Colton or Mrs. Abigail R. Colton. Martha Colton was the only one who had been identified to the company, and who, with the exception of a person authorized by her, ever had access to the property therein deposited, Abigail R. Colton being entirely unknown to the company, and never having so far complied with the rules of the company as to have access to the box in question.

After the death of Martha Colton her executors made a claim upon the safe deposit company for the contents of the box, which claim the company so far recognized as to allow them to examine the box. Subsequently the administrators of Abigail R. Colton made claim to the box and commenced a replevin action to recover the same, whereupon the safe deposit company commenced this action, praying to be allowed to interplead the defendants upon bringing the property into court. The defendants answered, setting up as against each other their respective rights and serving their answers upon each other, the administrators of Abigail R. Colton claiming that they were so clearly entitled to the possession of the property that the safe deposit company did not have the right to maintain the suit of interpleader.

Upon an appeal from a judgment in favor of the executors of Martha Colton,

*Held,* that the fact that the trial court had determined that the administrators of Abigail R. Colton were not entitled to the property justified, as against the claim of the administrators of Abigail R. Colton, an interpleader upon the part of the safe deposit company;

That the only inference to be drawn from the fact that the compartment stood in the name of "Miss Martha Colton or Mrs. Abigail R. Colton" was that it was the intention of the parties that either might qualify herself to have access to the box, and that it could not be concluded from such fact that there was a joint ownership in the property contained therein with a right of survivorship.

It further appeared that Martha Colton treated the property contained in the box and its proceeds as her own; that the income thereof was deposited to her credit in her own bank account, presumably with the knowledge of Abigail R. Colton, and that Martha Colton exercised all the rights of ownership over it.

Upon the death of Martha Colton there was found in her desk a paper under seal signed by Abigail R. Colton, by which she declared that in consideration of love and affection she had given, and thereby did give, to Martha Colton, her daughter, all her property, including money and securities, to have and to hold the same to her own use and benefit forever.

*Held,* that such facts were sufficient to establish a gift *inter vivos.*

APPEAL by the defendants, Caroline Colton Martin and another, as administrators, etc., of Abigail R. Colton, deceased, from a judgment of the Supreme Court in favor of the plaintiff and in favor of the defendants, Collis P. Huntington and others, as executors, etc., of Martha Colton, deceased, entered in the office of the clerk of the county of New York on the 5th day of April, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

*Andrew Wesley Kent,* for the defendants, appellants.

*Charles W. Pierson,* for the plaintiff, respondent.

*F. R. Coudert,* for the defendants, respondents.

VAN BRUNT, P. J. :

It appears from the evidence in this case that about October, 1882, one Martha Colton rented a compartment in the plaintiff's vaults and paid for the same and the box placed therein. The compartment was rented in the name of Miss Martha Colton or Mrs. Abigail R. Colton. Martha Colton was the only one who was identified to the company and who ever had access to this property, except a person authorized by her. Abigail R. Colton was entirely unknown to the company and was never identified ; had not so com-

plied with the rules of the company as to have access to the safe in question. Martha Colton died on the 3d of November, 1892, and Abigail R. Colton died on the 30th of November, 1892. The executors of Martha Colton made a claim upon the plaintiff for the contents of the safe, which the plaintiff so far recognized as to allow them to examine the box. Subsequently the administrators of Abigail R. Colton made claim to the box, and on the 9th of November, 1893, commenced a replevin action to recover the same. This action was then begun by the deposit company to be allowed to interplead the defendants upon bringing the property into court. The defendants answered, setting up, as against each other their respective rights and serving their answers upon each other. The court, upon the trial, having determined that the plaintiff was entitled to interplead the defendants, then proceeded to determine the rights of the parties and gave judgment. From the decree thereupon entered this appeal was taken.

The first question presented is: Had the plaintiff the right to maintain its suit of interpleader?

It is urged upon the part of the appellants that it had not, because the administrators of Abigail R. Colton were clearly entitled to the possession of the property, and that there was no substantial claim to the property established as against such administrators. The result of this action seems to be a sufficient answer to this proposition. The fact that the court below has determined that the administrators are not entitled to this property certainly justified, as against the administrators, an interpleader upon the part of the plaintiff.

It is further claimed as a ground for the dismissal of the bill for interpleader that the plaintiff was not ignorant of the rights of the respective defendants. But as the court has decided that the defendants, appellants, have no interest in the property, it is apparent that they cannot raise any such objection in an action of interpleader. It would seem from a consideration of the questions involved that this was eminently a case in which the plaintiff had a right to be protected in the delivery of this property.

The next question presented is whether the executors of Martha Colton or the administrators of Abigail R. Colton are entitled to the possession of the property contained in the box in question.

# 468 MERCANTILE DEPOSIT CO. *v.* HUNTINGTON.

One of the points which is most strenuously urged by the appellants is that this box standing in the name of Miss Martha Colton or Mrs. Abigail R. Colton, they became joint tenants entitled to the property contained therein, and that upon the death of Martha the title vested in Abigail, and upon her death in her administrators.

We think this is claiming altogether too much from the fact that this compartment in a safe deposit company was rented in the name of Miss Martha Colton or Mrs. Abigail R. Colton. It seems to us that all that can be deduced from that fact is that it was the intention of these parties that either might qualify herself to have access to the compartment box placed therein. It did not by any means determine the ownership of the contents of the safe. Nor could it be predicated upon this fact that there was a joint ownership in the property contained therein with a right of survivorship. We think it would be a proposition which would somewhat astonish the renters of boxes in safe deposit companies if it should be held that when two combine to rent a safe, the presumption would be that there was a joint ownership in all the property contained therein, even though the names of the renters were disjunctively associated.

It is further urged on the part of the appellants that certain averments made by Martha Colton in a bill of complaint, and certain evidence given by her, show that she was not possessed of any property whatever. But it is to be observed from the evidence in this case that Martha Colton treated this property and its proceeds as her own. The income thereof was deposited to her own credit in her own bank account, and it would seem, presumably with her mother's knowledge, that she exercised all the rights of ownership over it. Moreover, it appears that upon her death there was found in her possession a paper under seal, signed by Mrs. Colton, by which she declared that in consideration of love and affection she had given and thereby did give to her daughter Martha all her property, including money and securities, to have and to hold the same to her own use and benefit forever. This instrument is sought to be impeached by the suggestion that the handwriting of the body of the instrument was not established, and that one of the witnesses who testified to the signature of Mrs. Colton simply testified that in his opinion it was in her handwriting. It is to be observed that the evidence in regard to the signature of Mrs. Colton to this paper was

of such a character that it was introduced without objection, and that there was no attempt whatever made to prove that the signature was not Mrs. Colton's. And for the purposes of this appeal we must assume what the evidence abundantly established, that the signature was her's. The paper was found in the desk of Miss Martha Colton, and consequently had apparently been delivered to her. She already had the possession of the securities, they being in the box of the safe deposit company, to which she alone had access; and, as already suggested, she was continuously exercising the rights of ownership over these securities, receiving the income and depositing it to her own individual credit. All the elements of a gift *inter vivos* were, therefore, established, the gift and the possession of the thing given by the donee.

The learned counsel for the appellants, we think, correctly states the elements necessary to the validity of a gift *inter vivos : "First,* that the donor must be competent to contract; *second,* there must be freedom of will; *third,* the gift must be complete with nothing left undone; *fourth,* the property must be delivered by the donor and accepted by the donee; and, *fifth,* the gift must go into immediate and absolute effect." The appellants claim that in the case at bar all these essentials are wanting. We have examined the record with care and attention to see upon what foundation this assertion rests, and we are unable to discover that there is anything wanting to establish a valid gift *inter vivos.* We think, on the contrary, that instead of all the essentials being wanting, every one of them seems to be established by conclusive proof. The evidence is, beyond question, that at the time of the date of this instrument Mrs. Abigail R. Colton was entirely capable of contracting. There is not the slightest evidence that she was acting under any compulsion. Upon the contrary, her action was that which would be most natural under the circumstances. The gift was complete and nothing was left undone. Martha Colton had the control and custody of the securities, and the instrument of gift seems to have been delivered to her. She accepted the gift since it appears that she collected the income from these securities and appropriated it to her own use; and the gift went into immediate and absolute effect, because, as has already been stated, Martha Colton had the securities and used them as her own.

It is true that there is a claim that at the time the deed of gift bears date Abigail R. Colton was not *compos mentis.* But this rests entirely upon the evidence of an alleged declaration of Martha. It is true there was also some evidence upon the part of Mr. Hunt that prior to the date of the deed of gift Abigail R. Colton was in poor health and that her mind had begun to weaken, and that her daughter never permitted her to go out alone, and, also, that Martha had stated that her mother had been an invalid all her (Martha's) life — that is, for forty years — and had been in feeble health for a great many years. But this by no means establishes the fact that Mrs. Colton, in 1883, was incompetent to contract. There is no proof that her mind was in such an enfeebled condition that she could not transact business understandingly. It is a common experience that persons' faculties begin to weaken without their being idiots.

It is further urged that there was no evidence of a delivery of the instrument in question and that the paper was neither witnessed nor acknowledged, which latter allegation has nothing whatever to do with the delivery. The fact is that the paper was found in the daughter's desk (it is true, upon the premises in which both mother and daughter resided), where it had been in the daughter's possession. In the absence of other proof, the finding of a deed in the possession of the grantee named in the deed is considered reasonably strong evidence that it had been delivered. The same is true in regard to the claim that there was no delivery of the property by Abigail and acceptance by Martha. Martha had the property, used it as her own, received the income and deposited it to her own credit in her individual account.

It seems to us, taking into consideration all these facts, that but one conclusion can be arrived at, and that is the one reached by the learned court below.

The judgment appealed from should be affirmed, with separate bills of costs to both respondents.

Parker and Follett, JJ., concurred.

Judgment affirmed, with separate bills of costs to both respondents.