### RIX v. HUNT.

(Supreme Court, Appellate Division, Fourth Department.    April 10, 1897.)

1. GIFTS INTER VIVOS—DELIVERY—PRIMA FACIE PROOF.
    A delivery of notes claimed by plaintiff as a gift from defendant's testator is established prima facie by evidence that testator had said he wanted plaintiff to have the notes; that soon afterwards they were in plaintiff's possession, and were retained by her as owner, with testator's knowledge, to the time of his death.

2. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENT.
    Plaintiff claimed the property in suit as a gift from defendant's testator, and testified as to the facts constituting the gift.  A witness for defendant testified that after testator's death he heard plaintiff say that she had never had the property in her possession.    Plaintiff was then asked in rebuttal where the property was at the time referred to by defendant's witness.    Held, that such question did not involve a transaction between plaintiff and testator.

3. SAME—INTEREST IN RESULT OF ACTION.
    A witness is not shown to have been interested in the result of the action (Code Civ. Proc. § 829) by the fact that he stated that he had a lawsuit with defendant, and that he had been advised by counsel that if plaintiff, for whom he testified, won her case, he would win his.
    Follett and Green, JJ., dissenting.

Appeal from judgment on report of referee. .

Action by Maryette Rix against Artemus L. Hunt.   There was a
judgment in favor of plaintiff, and defendant appeals.   Affirmed.

The facts are stated by Mr. Justice FOLLETT as follows:

This action was begun February 15, 1894, to recover the value of seven
promissory notes and of a roan cow, which the plaintiff alleged that she owned,
and alleged that they were converted and taken from her possession by the
defendant on the 13th day of February, 1893.   The defendant, by his answer,
denied that the plaintiff was the owner of the property, and alleged title in
himself as executor.   The following is a description of the notes as described
in the complaint and by the evidence:

|  | Maker. | Payee. | Date of Note. | Amt. for which given | Due Thereon Feb. 13, 1893. |
|---|---|---|---|---|---|
| No. 1. | J. R. Wetmore............ | Sylvester Rix ..... | Mar. 19, 1883....... | $ 200 | $ 287 76 |
| No. 2. | Hyde Marvin.............. | "      " ..... | Oct. 1, 1884....... | 94 | 117 94 |
| No. 3. | Allen & Whitlock........ | "      " ..... | Aug. 4, 1886....... | 450 | 486 00 |
| No. 4. | Wetmore & Son........... | "      " ..... | Sept. 6, 1886....... | 360 | 422 37 |
| No. 5. | Alfred Leech ............. | "      " ..... | Apr. 1, 1888....... | 1,000 | 1,034 02 |
| No 6. | J. S. Van Dorne........... | "      " ..... | Nov. 1, 1889....... | 200 | 237 16 |
| No. 7. | Myron Leech.............. | "      " ..... | Aug. 14, 1891....... | 50 | 53 93 |

Note No. 3 was payable to the order of Sylvester Rix, but whether the others
were payable to order or bearer does not appear.  Sylvester Rix was a
bachelor, owning and occupying a farm of 160 acres in the town of Spring-
water, N. Y.  He owned no other realty.  In April, 1890, he executed a deed
of his farm to Maryette Rix and Clark Rix, who are brother and sister, and
children of Lewis Rix.  This deed he retained in his possession until Saturday,
December 3, 1892, when he delivered it to the grantees therein named.  De-
cember 4, 1892 (Sunday), he duly executed his last will, by which he bequeathed
all his personalty to his brother, Lewis Rix, of the town of Canadice, and ap-
pointed Artemus L. Hunt his executor.  On Tuesday, December 6, 1892, he
died, at the age of 82 years, leaving his said brother and William Barber, a
son of a deceased sister, his only heirs and next of kin.  February 6, 1892, the
will was duly admitted to probate, and letters testamentary issued thereon to
the defendant in this action; and on the 13th day of February, 1893, the defendant,
with the aid of the appraisers appointed by the surrogate's court, appraised the
personalty of the testator.  The plaintiff at that time had in her possession the
seven notes before described, claiming to own them, but upon a peremptory
demand handed them to the defendant, and they were inventoried, and sub-
sequently the defendant, as executor, collected them in the due course of ad-
ministration.  The referee found that notes Nos. 1, 3, 4, and 5 and the roan
cow were given to the plaintiff by Sylvester Rix in May, 1891, and that in
October, 1892, he gave her notes Nos. 2, 6, and 7, and that there were due on the
notes the amounts alleged in the complaint, except that $30 had been paid on
No. 2 to Sylvester Rix, in his lifetime, leaving its value at $87.94, and that the
value of the roan cow was $30; and directed a judgment in favor of the plain-
tiff for the value of the notes and of the cow, with interest, amounting to
$2,851.85, with costs.  The defendant served and filed exceptions to the report,
and, after entry of the judgment, appealed therefrom, and made a case, which
contains all the evidence given on the trial.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN,
and WARD, JJ.

Ernest W. Brown, for appellant.
J. F. Parkhurst, for respondent.

ADAMS, J.   The plaintiff brings this action to recover the value
of seven notes, amounting in the aggregate to $2,638.98, and interest
thereon, together with a roan cow of the value of $30, which she claims
to own by gift from her uncle, the defendant's testator, Sylvester Rix.

The action was tried before a referee, who found that the notes and cow were the property of the plaintiff; that they were given to her by the testator prior to his death; and that they were taken from her possession by the defendant, as executor of the last will and testament of Sylvester Rix, upon the claim that they were the property of the estate which he represented. The contest before the learned referee was confined mainly to the plaintiff's right to the notes in suit, little or no evidence being given relative to the cow; and the principal argument addressed to this court upon the part of the defendant is that the evidence was insufficient to sustain the referee in finding that the notes were delivered to the plaintiff by Sylvester Rix during his lifetime, under such circumstances and conditions as to establish a valid gift of the same, within the well-established rules of law applicable to cases of this character. The essential question, therefore, which we are called upon to review, resolves itself into one of fact, and imposes upon this court the duty of examining with care and some degree of minuteness the evidence which bears either directly or remotely upon the plaintiff's title to these notes. From such an examination of the record furnished us we find the following facts established beyond all controversy, viz.: That the testator was the owner during his lifetime of a farm consisting of 160 acres, situate in the town of Springwater, Livingston county, in this state, upon which he resided up to the time of his death, which occurred about the 9th day of December, 1892. He was a bachelor, and about 82 years of age, his nearest relative being a brother, Lewis Rix, who was the father of the plaintiff, and who died in December, 1893, at the age of about 90 years, leaving the plaintiff, four other children, and two grandchildren, his only heirs at law and next of kin, all of his own children being married, except the plaintiff; and these children and grandchildren, together with one other nephew, the son of a deceased sister, constitute the present heirs at law and next of kin of the testator. Some nine years prior to the death of Sylvester Rix, the plaintiff, at the request of her uncle, came to live with him upon his farm, where she continued to reside until the time of the latter's death. During all of this time she cared for her uncle, performing the necessary housework, as well as considerable work upon the farm, such as milking the cows, feeding the pigs, gardening, and assisting in the haying. She also assisted in nursing and caring for her uncle when he was sick. During the same period of time the plaintiff's brother, Clark Rix, worked his uncle's farm on shares. He did not, however, live upon the premises, until the spring of 1891, when he moved into his uncle's house, where he remained until the death of Sylvester Rix. In April, 1890, the testator executed to the plaintiff and his brother a deed of his farm, which was worth at that time about $4,000. He retained this deed in his possession until some three or four days prior to his death, when he delivered it to Clark Rix.

Clark Rix, being sworn as a witness in behalf of the plaintiff, testified that early one morning in May, 1891, while his uncle was suffering from an attack of pneumonia, the latter called him and his sister into his room, saying that he desired to talk with them respecting the property he intended to give them. In this conversation he said that

the roan cow was the plaintiff's, and that he wanted her to have four of the notes in suit, specifically mentioning the same. The witness further testified that he then said to him, "Uncle, I do not think we can hold this property," and that his uncle replied, "You can, because you will have possession of it." It does not appear, however, that at this time there was any manual delivery of the notes, but among those which Clark Rix says were mentioned by his uncle was one of $1,000, made by Alfred Leech; and Mrs. Leech testifies that in July, 1891, she went to the testator's house for the purpose of paying interest upon that note, at which time she was informed by the testator that he could not receive the interest, because the plaintiff had the note; that it was hers, and that she was not in, but that when she returned he would fetch it over; and that the following morning he did bring the note to Mrs. Leech's house, when she paid him the interest thereon.    Again, in July, 1892, Mrs. Leech went to the testator's house for a like purpose, when the plaintiff, at the request of her uncle, went into another room and brought out a pocketbook containing the Leech note, upon which Mrs. Leech paid a year's interest, Clark Rix drawing a receipt therefor, which the testator signed.    Another witness, by the name of William Barber, who was a nephew of the testator, testified that in October, 1892, his uncle said to him that he "didn't have money enough nor property enough to pay her [the plaintiff] for what she had done."    And that at another time he said to him that the plaintiff "had done well for him; that he found no fault with her; and that, if money would pay her, she had got her pay."    And at about the same time he stated to Clark Rix that he had given the plaintiff some more of the notes.    It is also made to appear that Sylvester Rix, during all the time that the plaintiff lived at his house, with the exception of a few days immediately preceding his death, slept in and occupied a bedroom off from and east of the sitting room; that he kept his notes and securities in a tin box under the head of his bed; and that during a portion of this time, at least, the plaintiff had the notes in suit in a large pocketbook, which she kept in her trunk in the parlor, north of the sitting room.    Clark Rix further testifies: That in November, 1892, one James Robinson came to his uncle's house to see a note upon which his father was liable as maker.    That the witness stated to his uncle that Robinson was there, and his object in coming.    That his uncle then remarked: "All right, he can see it.    What notes I have got you will find in that box,—little trunk." That the witness thereupon took the notes out of the box, laid them upon the bed, picked out the Robinson note, and allowed Robinson to look at it, after which it was returned to the envelope from which it was taken, and the tin box was set back under the bed.    He further testifies that he examined carefully all the notes in the box at that time, and that none of the seven notes claimed by the plaintiff to have been given her by her uncle were among them.    This witness further testifies that a few days prior to his uncle's death the latter spoke to him in regard to $30 which he said had been paid upon the Marvin note, adding that the plaintiff had the note, and that the indorsement ought to be made thereon.    He also at the same time spoke of the Van Dorne note, stating that some groceries which had been obtained the

winter previous should be indorsed on that note; both of the notes
referred to being among those claimed by the plaintiff. On December
4, 1892, the testator executed his last will and testament, in and by
which he gave and bequeathed to his brother, Lewis Rix, all of his
personal property of every description. It appears that at the time
of the death of the testator all the notes in question were in the
possession of the plaintiff, and that there was considerable other per-
sonal property which passed to Lewis Rix under his brother's will.

The evidence which has thus far been detailed was furnished mainly
by witnesses sworn in behalf of the plaintiff, to meet which a number
of witnesses were called for the defense, who testified to admissions
and declarations which they claimed to have heard the plaintiff make
at various times, which were somewhat contradictory of her evidence,
and were to the effect that she did not have the notes in her posses-
sion, and had not received the interest on them as hers. The admis-
sions and declarations thus detailed were, however, denied by the
plaintiff when she was called to the stand to give evidence in rebuttal;
and it will be readily seen that the learned referee was consequently
forced to ascertain and determine the truth of this controversy upon
evidence which was conflicting in its character, and which demanded
the exercise on his part of good judgment and careful analysis, in order
to determine its preponderating weight and value.

In cases of this nature, where claims are presented against a de-
ceased party, it is unquestionably well settled by repeated adjudica-
tions that the same should be scrutinized with even more than ordi-
nary care, in order to prevent, as far as possible, the allowance of un-
just and fictitious demands against parties whose mouths are sealed
by death. With this rule for our guide in the case under considera-
tion, and with the application of the closest scrutiny to the evidence
contained in the record, we are, nevertheless, of the opinion that it is
ample to sustain the findings of fact and conclusions of law adopted
by the learned referee. In saying this we assume that whatever title
the plaintiff has to the property over which this controversy arises de-
pends upon her establishing a valid gift thereof from the donor, her
uncle; and to accomplish this—the gift being one inter vivos—there
must be present five distinct elements in order to invest it with the
quality of validity. These elements are: "First. That the donor
must be competent to contract; second, there must be freedom of will;
third, the gift must be complete, with nothing left undone; fourth,
the property must be delivered by the donor, and accepted by the
donee; and, fifth, the gift must go into immediate and absolute effect."
Deposit Co. v. Huntington, 89 Hun, 465–469, 35 N. Y. Supp. 390, 392.
There is no pretense that the donor was at any time incompetent to
execute a valid gift of his property; neither is it claimed that the notes
in suit were obtained by any coercive domination of his will power by
the donee; but, as we understand the defendant's position, it is in-
sisted that the gift was not complete, in that it did not go into imme-
diate and absolute effect by actual delivery, and this contention brings
us back to a consideration of the proper value which may attach to
the evidence furnished by the plaintiff in support of her claim. The
defendant is undoubtedly correct in saying that there is no direct and

positive proof of the delivery of the property in question, for, as has already been suggested, it is not claimed that the notes were handed over, or even that they were present, at the early morning interview in May, 1891; but it does appear by evidence which was satisfactory to the referee that soon thereafter they were found in the possession of the plaintiff, who retained them as the ostensible owner, with the knowledge of her uncle, down to the time of his death. This circumstance, of itself, is substantial evidence of delivery (Deposit Co. v. Huntington, supra); and, when accompanied by acts and declarations upon the part of the donor, together with other circumstances, all tending in the same direction, it certainly was sufficient to create a presumption in favor of the validity of the gift, which, until overcome by satisfactory proof, afforded adequate justification for the inference that the same had been completed in every essential particular. Grangiac v. Arden, 10 Johns. 293; Babcock v. Benson (Sup.) 11 N. Y. Supp. 455; Hoffman v. Hoffman, 6 App. Div. 84, 39 N. Y. Supp. 494; Bedell v. Carll, 33 N. Y. 581; Trow v. Shannon, 78 N. Y. 446. But this prima facie evidence of the delivery and completion of the gift found abundant support and strength in other circumstances and inferences with which the case abounds. In the first place, the gift was not an unnatural act upon the part of the donor, but, upon the contrary, was just what might have been expected of a just and generous person in the same circumstances. With the exception of a brother, whose decease was in all probability but a question of a year or two at most, the plaintiff was as nearly related to Sylvester Rix as any living being. She had come to him in his old age, and had served him faithfully for nearly 10 years. There is no evidence that she ever received any compensation for the services thus rendered other than a half interest in the homestead, and the cow and notes in suit. All the other nephews and nieces of the donor were married, and living by themselves; and no reason is furnished, other than that of kinship, why they should share in the testator's bounty. Whatever claim they had growing out of this relationship had been recognized by the provision in the testator's will in favor of their father, and they ought to be slow of interference with the disposition made by their uncle of the remainder of his property, especially as that disposition was obviously prompted by a just desire to discharge an obligation which rested upon him, and which he had repeatedly recognized and declared his intention of fulfilling.

Having reached this conclusion in respect of the principal question brought to our notice upon this appeal, it only remains to consider one or two exceptions to the admission of evidence upon the trial. Among the witnesses called by the defendant was Arnold Kerkendall, who testified that in February, 1893, he heard the plaintiff tell one Mark Rix that she had never had these notes in her possession, and had never received any interest on them as hers. The plaintiff, upon being recalled to the stand, after denying the making of such statement, was asked where the notes were at the time of the interview between her and Mark Rix,—it being conceded that he was at her house upon one occasion, in company with Kerkendall. This question was objected to on the

ground that it was incompetent, under section 829 of the Code of Civil Procedure. The objection was overruled, and the plaintiff answered that they were in her trunk, and that her trunk was in her bedroom. A motion was thereupon made to strike out the answer upon the ground already stated, which was denied, and the defendant's counsel duly excepted to both the admission of the evidence and to the refusal to strike out the same. These exceptions, we are persuaded, present no error. We are unable to see how the evidence objected to can be regarded as in the nature of a transaction between the plaintiff and her uncle, inasmuch as it related to her possession of the notes in suit some two months subsequent to the death of the latter. But, however this may be, it was certainly admissible for the purpose of corroborating her denial of the admission which she was said to have made to Mark Rix, for, if she had the notes in her trunk at that very time, it is hardly conceivable that she would be declaring that she had never had possession of them. When Clark Rix was called to the stand as a witness for the plaintiff, he was subjected to a preliminary examination by the defendant's counsel, during which he stated that he had a lawsuit pending with the defendant, growing out of a claim made by him to certain personal property which was upon his uncle's premises at the time of his decease, and that he had said to the defendant he had been advised by counsel that if the plaintiff won this action he could win his. The defendant's counsel thereupon objected to this witness giving any evidence of personal transactions with the decedent, upon the ground that he was interested in the event of the action, and that his evidence was, therefore, incompetent, under section 829 of the Code of Civil Procedure. It is, of course, conceded that the witness was in no sense a party to this action, and, consequently, if disqualified from testifying in behalf of the plaintiff, it must have been by reason of his interest in its event. It becomes important, therefore, to refer to the section of the Code which is invoked in support of the defendant's contention, in order to determine how far it sustains him therein. Its language, so far as applicable to this particular case, is as follows:

"Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined as a witness, in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person."

And it would seem to follow that this witness was not disqualified, unless he was not only interested in the event of the action, but was also examined in his own behalf or interest. It is probably undeniable that the witness was, in a sense, interested in the event of the action; and, if he believed what he had stated to the defendant, he was, perhaps, in the same sense examined in his own behalf; but this is not the sense in which the word "interest" is used in this section. The test of interest which disqualifies a witness, not a party, under this section, is thus stated by Mr. Greenleaf in his work upon Evidence:

"The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain, and vested interest, and not an interest remote, uncertain, or contingent." 1 Greenl. Ev. § 390.

And this test has been frequently recognized and adopted by the courts of this state. Hobart v. Hobart, 62 N. Y. 80; Nearpass v. Gilman, 104 N. Y. 506, 10 N. E. 894; Wallace v. Straus, 113 N. Y. 238, 21 N. E. 66; Allis v. Stafford, 14 Hun, 418; Ely v. Clute, 19 Hun, 35. Certainly, the interest of Clark Rix in the event of this action was by no means present and certain. It was altogether uncertain, remote, and contingent; and any judgment which might be rendered herein could not be used as evidence in his action. However much he may have relied upon the advice which he says had been given, and however much he may have been influenced by such advice in giving his testimony, he was not interested in the sense in which that word is used in the section adverted to. And whatever interest he did have did not appear to prejudice him in the opinion of the learned referee, who takes occasion to say that he impressed him as a very candid witness, whose testimony was consistent with itself. We find no other exception in the case which seems to demand any attention, and our conclusion upon the whole case is that the judgment appealed from should be affirmed.

Judgment affirmed, with costs.

HARDIN, P. J., and WARD, J., concur.

FOLLETT, J. (dissenting). The sole question involved in this action is whether the plaintiff established by legal and sufficient evidence that her uncle, Sylvester Rix, gave to her the seven notes and the cow, the value of which this action is brought to recover. It has long been the rule in this state, so often declared that it has become elementary, that whoever claims title to property by gift must establish it by evidence that is clear, convincing, strong, and satisfactory. In such cases the law "does not so much consider the bearing or hardship of its doctrine upon particular cases as it does the importance of preventing a general public mischief which may be brought about by means, secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties." 1 Story, Eq. Jur. § 310; Case v. Case, 49 Hun, 83, 1 N. Y. Supp. 714. The rule in such cases is that the gift must be established by evidence possessing the highest degree of probative force. All the authorities agree in this, though the rule is expressed in various forms. Scoville v. Post, 3 Edw. Ch. 203; Grey v. Grey, 47 N. Y. 552; Grymes v. Hone, 49 N. Y. 17; Shakespeare v. Markham, 72 N. Y. 400; Lewis v. Merritt, 113 N. Y. 386, 21 N. E. 141; Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627; Devlin v. Bank, 125 N. Y. 756, 26 N. E. 744; Van Fleet v. McCarn (Sup.) 2 N. Y. Supp. 675; Gaylord v. Gaylord, 7 N. Y. St. Rep. 703; Jennings v. Davis, 31 Conn. 138; Pom. Eq. Jur. § 1146. In Grymes v. Hone, supra, it was said:

"As there is great danger of fraud in this sort of gift, courts cannot be too cautious in requiring clear proof of the transaction. This has been the rule from the early days of the civil law (which required five witnesses to such a gift) down to the present time."

In May, 1891, Sylvester Rix, the alleged donor, was very ill of pneumonia, at which time he was 81 years of age. This sickness was testified to by the plaintiff, by Clark Rix, her brother and principal witness, and by Grace Rix, a niece of the plaintiff, who was sworn in behalf of the plaintiff and testified:

"Am daughter of Clark Rix, and in May, 1891, lived with them [the plaintiff and her father] at Uncle Sylvester's, when he had an attack of pneumonia. I remember father calling her [plaintiff] early one morning, and she went downstairs. Uncle was very sick at that time, but recovered, and lived for more than a year after that, and was right around attending to his usual business."

The only transaction between the alleged donor and the plaintiff in which anything was said or done about giving her the property in suit occurred during this illness. At this alleged interview, Sylvester Rix, the plaintiff, and Clark Rix were alone present, and the only evidence describing the transaction was given by Clark Rix, who testified:

"When he [Sylvester Rix] was sick, in May, he called me early one morning and said, 'I want you to call Maryette.' I called her, and we went into his room. He said, 'I want to talk with you and Maryette with reference to what I want to give Maryette and you.' He said, 'I want her to have some notes.' He said that the roan cow was hers, and that he wanted her to have the Leech note, the two Wetmore notes, and the Allen and Whitlock note. I said to him, 'Uncle, I do not think we can hold that property.' He said, 'You can, because you will have possession of it. I will ask Hunt when he comes up.' Hunt came up that morning, and he and uncle had a conversation there that morning. * * * The conversation about the property that I lay claim to under gift took place at the same time as the conversation in which my sister claims that the notes were given to her. I went upstairs, and brought her down to hear that conversation, about four or five o'clock in the morning. The only persons who heard this conversation were my sister, Mr. Rix, and myself. He said he wanted to give her some notes. He named four different notes, and said, also, the roan cow. I did not see the tin trunk that morning, and no notes were present. He didn't hand any notes to her. He said he was prostrated, and it might go hard with him. The only conversation I ever heard with Mr. Rix about giving away these notes was at five o'clock in the morning, when she was present, and afterwards when Hunt was present; and none of the notes on either occasion were present or delivered to her. Uncle got around after that."

This is the only direct evidence given in behalf of the plaintiff tending to show that Sylvester Rix gave the property to the plaintiff, and this evidence falls far short of establishing a gift. The cow was on the farm, and remained there afterwards as before. The notes were not present, and were not delivered to the plaintiff. Delivery of a subject of a gift is essential to constitute a legal gift. The alleged donor did not surrender possession of the notes, or of any of the property, but retained all in his possession as before. It is conceded that thereafter and until his death Sylvester Rix received the interest on these notes as before. The plaintiff testified, "I never claimed that I collected interest on those notes." The only corroborative evidence tending to support a gift of these notes was given by the widow of Alfred Leech, who testified that

in July, 1891, she called on Sylvester Rix to pay the interest on her husband's note, and that he then said that the note was the plaintiff's; that afterwards Mr. Rix brought the note to her house, and that she paid the interest to him; and that in July, 1892, she called to pay the interest then due, and "Mr. Rix told Maryette to get the note. We were in the sitting room. Maryette went into the parlor, and brought back the note with her. I counted out fifty' dollars, and handed it to Clark Rix, and asked him to indorse it on the note, and he done so. Then I asked him for a receipt, and he wrote the receipt. Mr. [Sylvester] Rix signed it." Clark Rix testified that Sylvester Rix signed the receipt. Mr. Whitlock testified that the payments of the note of Allen & Whitlock for $450, made subsequently to May, 1891, were made to Sylvester Rix, but there is no occasion for calling attention to the fact that after this alleged gift in May, 1891, the plaintiff had no control over the notes, for she testified that she never claimed to have received anything on them. Mark Rix, a brother of the plaintiff, testified that shortly after the death of Sylvester Rix he asked the plaintiff, "Have you ever had them notes in your possession, and received the interest on them as yours?" and she said she never had. This conversation was at plaintiff's house the day before the will was proved. Arnold Kerkendall testified that he was present at this conversation, and that she said that she never had the notes in her possession, and never received any interest on them. The same witness testified on another occasion that the plaintiff said that the notes had never been "delivered up to her or given to her." Harriet Briggs, a sister of the plaintiff, testified that she heard the plaintiff say that she had never had the notes in her possession, or received the interest on them, previous to the death of Sylvester Rix. Dr. Hunt, the executor, testified that the plaintiff told him that her uncle never delivered the notes to her in his lifetime, and that the reason why she did not collect the interest on the notes was because she had nothing to do with them, except that she knew where they were. A further statement in the testimony is referred to as corroborating Clark Rix. He testified that James Robinson called at the house about a week before the death of his uncle, and asked to see the note of his father; that his uncle said, "What notes I have got you will find in that box." The witness then got out the box, and took the notes from a yellow envelope, laid them on the bed, and picked out the Robinson note; and that none of the notes claimed by the plaintiff were among the notes in the envelope. Mr. James Robinson was not called, and Clark Rix corroborates himself. There is not one word of testimony tending to show any transaction between Sylvester Rix and the plaintiff in which he gave to her notes Nos. 2, 6, and 7, amounting to nearly $600. The only evidence upon which it is pretended to found a gift of these notes is that of Clark Rix, who testified that:

"In the fall of 1892, he said that he had given my sister some more of those notes. He said that she was an old woman for one of her age, and she had no home unless he provided for her. There was nobody to look after her, and he would provide for her. He said there was no one to provide for her, and that she would have to be taken care of, for she had no home of her own. He spoke

of this Marvin note; said that there was thirty dollars that Marvin had paid him that should be indorsed; that sister had the note, and that the money had been used in fixing the house."

It is upon such slender evidence that this claim is sought to be supported, and by a witness who characterizes his relation to the action and his interest in the result as follows:

"I have a lawsuit pending with the executor of the Sylvester Rix estate. I have made a claim to certain personal property that was on the premises at the time of his decease, claiming that he had given it to me. I have stated to Dr. Hunt that I had been advised by counsel that, if Maryette won, I could win."

After the death of Sylvester Rix these notes were in the possession of the plaintiff until the estate was inventoried, and that is urged as a circumstance tending to show a gift. The plaintiff had been a trusted domestic of her uncle for nine years. She knew where his notes were kept, and from time to time, when he had occasion to use them, he quite naturally sent her for them. He was old and feeble, and she was young and strong, and trusted by her uncle. After the death of the uncle, this plaintiff and her brother were in charge of the household, and the box where the notes were kept was not locked, and the fact that she had possession of these notes after his death has no probative force. Conklin v. Conklin, 20 Hun, 278; Grey v. Grey, 47 N. Y. 552; In re Bolin, 136 N. Y. 177, 32 N. E. 626; Kenney v. Public Adm'r, 2 Bradf. Sur. 319; Drischler v. Van Den Henden, 49 N. Y. Super. Ct. 508; Alsop v. Bank (Sup.) 21 N. Y. Supp. 300.

It is urged that this plaintiff performed unusual services outside of ordinary household duties for her uncle. The evidence is to the contrary. It is true that she sometimes milked the cows, drove them to and from the pasture; but during the period when she was performing these services Clark Rix was running the farm on shares, and it was for him, and not her uncle, that these services were rendered. So far as it appears, the duty of the plaintiff in the household of her uncle was simply to care for him and herself. Whether she was paid or not does not appear, but she at least was given one-half of his farm, the validity of which conveyance is not questioned. If it be conceded that every word of the testimony offered in behalf of this plaintiff is true, it fails to establish a cause of action. It is as well settled as anything can be that a gift made in anticipation of death is absolutely revoked by the recovery of the donor from the peril in the presence of which he made the gift. The fact that the gift claimed by the plaintiff was made in apprehension of death is clearly proved by the evidence given in her behalf, and it is also clearly proved by her witnesses that her uncle recovered from that sickness, lived more than a year, and took charge of his business as usual. This was a revocation of the gift. The fact that her uncle supposed that he had some personal property to dispose of, and that he made a will two days before his death, bequeathing all of his personalty to his only surviving brother, is some evidence that he believed that he had personalty to bequeath. On looking into the inventory, we find that he held notes amounting to more than $3,500; and Clark

Rix testified on the trial that he and this plaintiff claimed all of them as gifts, except about $600, as the result of the transaction of May, 1891. His claim, of course, can be supported only by the evidence of his sister, whose claim he supports in this action. This witness is not a disinterested one, but is as directly interested in the result as though he were testifying in his own behalf. In Farian v. Wiegel, 76 Hun, 462, 28 N. Y. Supp. 95, and in Ridden v. Thrall, 125 N. Y. 572, 576, 26 N. E. 627, it was held that a gift, the validity of which depended upon the uncorroborated evidence of the wife of the donee, was not proved by plain and satisfactory evidence. In the case at bar the gift is supported solely by the evidence of a person who testified that he was directly interested in the result, because he expects to succeed in his action against the executor by proving by the plaintiff in this action the transaction of May, 1891. Many cases might be cited in respect to the kind of evidence required to support a gift asserted for the first time after the death of the alleged donor, many of which are referred to in Manhardt v. Frye (decided at the present term) 44 N. Y. Supp. 836, and others will be found in the treatise upon gifts in the second volume of the last edition of Prof. Schouler's treatise on the Law of Personal Property, whose discussion of this subject is the ablest and fullest which I have found. The referee erred in denying the defendant's motion, made at the close of the plaintiff's case, that the complaint be dismissed, and the defendant's exceptions to the conclusions of law were well taken. There are exceptions to the admission of evidence given in behalf of the plaintiff which, I think, were well taken, but, having reached the conclusion that the evidence fails to establish a cause of action, it is unnecessary to consider them.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

GREEN, J., concurs.