JOSEPHINE ORTON and CAROLINE STEWART, Appellants, *v.* HANNAH N. TANNENBAUM and Others, Respondents.

Second Department, December 10, 1920.

Trusts — delivery of unindorsed certificates of stock to third person for distribution after death — direction for distribution not testamentary disposition of property — intention of decedent to pass title to third person as trustee — necessity for manual delivery of certificates.

In an action to have a trust declared in certain stock held by the defendant it appeared that the decedent gave the stock in question to the defendant with direction for distribution after the decedent's death, and that the defendant kept the stock in her possession thereafter.

*Held,* on all the evidence, that the decedent at the time of the delivery of the stock to the defendant with directions for distribution intended to pass title to the defendant to be held in trust for the purposes specified.

Such direction for distribution was not an attempted testamentary disposition of the stock.

It was not necessary to a valid trust that the decedent take the certificates from the defendant who was holding them for safekeeping, and immediately redeliver them to the defendant as trustee.

The fact that the stock certificates in the possession of the defendant were issued in the name of the decedent and were unindorsed did not prevent the passing of title for the purposes of the trust.

The direction that the distribution should not take place until the death of the settlor was not inconsistent with an intention to create a present trust.

PUTNAM, J., and JENKS, P. J., dissent, with opinion.

APPEAL by the plaintiffs, Josephine Orton and another, from a judgment of the Supreme Court in favor of the defendants,

entered in the office of the clerk of the county of Kings on the 10th day of June, 1920, upon the decision of the court rendered after a trial at the Kings County Special Term dismissing the complaint upon the merits, and also, as stated in the notice of appeal, from the said decision entered in said clerk's office on the 12th day of April, 1920.

*John Preston Phillips* [*Arthur Butler Graham* with him on the brief], for the appellants.

*James B. Mackie*, for the respondent Tannenbaum.

*Thomas J. Snee* [*Peter B. Hanson* with him on the brief], for the respondent administrator.

KELLY, J.:

Elizabeth Flanagan died in Brooklyn on January 24, 1919. She was about forty-five years of age, had never married and had no relatives. She lived alone in an apartment maintained by her. From her girlhood she had been a working woman and had accumulated a small estate from her earnings and investments. She had two close friends, the plaintiffs, also unmarried working women, with whom she maintained personal association from the time they started to earn their living as young girls. They visited together, spent their summer vacations together and their relations were apparently intimate and affectionate. In the early days there was another girl in this close association, who, however, married and died, leaving two daughters, the defendants Norris, who appear to have taken their mother's place in the circle. The defendant Tannenbaum, also unmarried, lived in Manhattan and was engaged in business there. Miss Flanagan and the plaintiffs were stenographers or filled ordinary clerical positions. Miss Tannenbaum had attained some standing as a confidential secretary or manager for her employer, a man of some means. She had a safe deposit box and was familiar to some extent with stocks, bonds and securities. Miss Flanagan, the decedent, became acquainted with her some fifteen years before her death. Their relations became very friendly. They met daily and lunched and visited together, and Miss Flanagan expressed confidence in the honesty and ability of Miss Tannen-

Second Department, December, 1920.        [Vol. 194.

baum. For some time prior to her death she consulted her as to her comparatively small investments made in stocks or other securities, and from time to time she left these securities, issued in her own name, with Miss Tannenbaum for safekeeping. In the fall of the year 1917 Miss Flanagan was very ill. The plaintiffs and the two Norris girls visited her at her apartment and nursed and cared for her. She returned to work in December, 1917, against the advice of Miss Tannenbaum, but she declared that she was lonesome at home during the day when her friends who were employed could not call upon her, and she thought she would be better off if she went to business. She continued to go to work up to three or four days before her death. She frequently spoke to Miss Tannenbaum in most affectionate terms of the plaintiffs and the two Norris girls.

The relations existing between these women is apparent from the record. There is no contradiction or controversy as to the facts. They were not housewives, they had been earning their living together from girlhood. Apparently they came into the business life of Manhattan in the late nineties when women began to take their place in the offices in New York city. They were friends and close associates of many years standing. One of them, the mother of the Norris girls, had followed old-fashioned lines and married. The other three remained single and managed their own affairs. Miss Tannenbaum's position and relation to business affairs impressed her friends, who regarded her as a person of some financial experience and responsibility; she bought and sold stocks for her employer, she employed brokers on her own account.

In the month of January, 1918, after Miss Flanagan's return to work in December, 1917, she called at Miss Tannenbaum's office. That lady had in her safe deposit box for safekeeping stock certificates belonging to Miss Flanagan and issued in her name. She had previously consulted Miss Tannenbaum when she desired to purchase or sell stocks or invest her money. These securities in Miss Tannenbaum's keeping were not all of Miss Flanagan's property — she had a deposit in a savings bank, she owned other securities and cash in the hands of her employer, and the furniture and fittings of her apartment.

On this day in January, 1918, Miss Tannenbaum says she had the particular securities in her possession, and Miss Flanagan, having first met her in a restaurant, came to her office " to go over the stocks," " to arrange them." She told Miss Tannenbaum that in the event of her death these securities were to be given to the two plaintiffs and the Norris girls. Miss Tannenbaum agreed, but stated that she did not wish to assume the responsibility for the actual delivery of the securities to the parties, and it was agreed that the defendant Norris, the father of the two girls, known to all the parties, should make such actual delivery, but Miss Tannenbaum agreed to supervise the matter and to see that delivery was made. From that day to the date of Miss Flanagan's death a year later, Miss Tannenbaum had possession and, as she says, full control of the securities. Miss Tannenbaum testifies that prior to January, 1918, Miss Flanagan at times sold stocks, " always asking my advice," but after the transaction related she sold none of them. " I [Miss Tannenbaum] always gave the order. * * * She didn't arrange the sales at all. * * * She didn't make the investments, I made them." " I practically had full charge of them from the latter part of December, 1917, and entire charge in January, 1918. Q. She never had possession of them after that time? A. Never; in fact she never saw some of them at all; a good many she didn't even see." They were " never out of my possession, excepting, of course, when I changed them with the brokers for other stocks." At times she told Miss Flanagan of her disposition and sale of the securities, she would tell her she was going to sell, and when necessary she presented the certificates to Miss Flanagan for indorsement, but Miss Flanagan said all new securities " became a part of those securities that I held," and she spoke of the securities and the distribution thereof nearly up to the time of her death. Miss Tannenbaum insisted that the stock certificates should be issued in the name of Miss Flanagan. If there were any dividends the checks were made in Miss Flanagan's name " Under my orders." None of the securities were actually transferred to Miss Tannenbaum's name as trustee but she was asked: " Q. Now, Miss Tannenbaum, when did you realize for the first time that you had been constituted a

trustee? A. From January, 1918." She was asked if Miss Flanagan ever spoke of making a will. She said she might have done so but " not with reference to this trust that I had. * * * Well, you see, I am under oath here, and I can swear to the fact that she gave me that as a trust, the securities, but I cannot swear positively about the will, that she positively told me that she made a will."

After Miss Flanagan's death, it appears that Mr. Norris made some claim to Miss Tannenbaum that decedent had executed a will, in which the securities in question were distributed in accordance with her conversation of January, 1918, but of which will he, Norris, was named as executor. Miss Tannenbaum refused to countenance the suggestion because, as she said, she " had been for many years a close personal friend and financial adviser of the said Elizabeth Flanagan, and was and is thoroughly conversant with all her business affairs and transactions." This appears to have resulted in a disagreement, and Miss Tannenbaum alleges in her answer that thereupon Norris refused to act as the distributing agent under the trust, and in retaliation notified the public administrator that she had these securities in her possession as the property of the decedent who died intestate leaving no heirs or next of kin. That official thereupon secured letters of administration upon the estate of the decedent. Miss Tannenbaum, desiring to avoid any personal liability, consulted counsel, and this action was commenced to obtain a decree which would protect her in making the distribution directed by her deceased friend. The plaintiffs ask that the trust be established, that a decree be made directing the delivery of the securities in accordance therewith and that the public administrator be directed to indorse for transfer any securities in the trust standing in the name of decedent. Miss Tannenbaum answers admitting the facts alleged in the complaint, and joins in the plaintiffs' prayer for relief. The defendant Attorney-General answers that he is a stranger to the matters and things alleged in the complaint and asks that a just and proper decree be made settling and determining the title to the securities in question. The defendant public administrator answers denying knowledge or information as to the allegations of the plaintiffs and prays for judgment

dismissing the complaint. Lauretta Norris, infant defendant, by Charles Norris, her guardian *ad litem*, filed the usual infant's answer.

The defendants called no witnesses at the· trial. The only defendant appearing was the public administrator, who contended that the legal title to the shares of stock in question was never divested from the decedent and, therefore, no trust was created.

The learned justice at Special Term dismissed the complaint upon the merits for the reason stated by him in his opinion, that he found no evidence of any intent on the part of the decedent to pass the title to the shares to Miss Tannenbaum either at the interview in January, 1918, or at any other time. He says Miss Tannenbaum was merely a bailee, and that decedent's intention as disclosed by the evidence was to make a testamentary disposition of the property in question, retaining full control and power of disposition thereof during her lifetime, and as· her intention was not evidenced by an instrument executed with testamentary formalities, the attempted disposition was ineffectual. He decided that no trust was created for the plaintiffs and the two Norris girls, and said: "Although this seems to result in frustrating the wishes of decedent and in hardship to the intended beneficiaries, because, as decedent left no next of kin, all property as to which she died intestate will go to the State, the court cannot overrule the statutes which require that testamentary dispositions of property shall be made in the manner therein prescribed. It is a case in which the Legislature might well, it would seem to me, effectuate the decedent's intention by releasing the property to the intended beneficiaries, but this court can afford them no relief." (110 Misc. Rep. 128.)

If the disposition of the property was a testamentary disposition as found by the learned justice, his conclusion is undoubtedly correct because the dead woman made no will. If, on the other hand, she established a valid trust in her lifetime under which the property was actually transferred and delivered to a trustee to hold during her life, and to distribute to her beneficiaries on her death, then such trust was valid, and it is one of the most important duties devolved upon the courts to see that her intention is carried out.

The case turns on the contention of the public adminis-trator that there was no evidence of a delivery of these stocks by the deceased to Miss Tannenbaum with an intent to vest the title in Miss Tannenbaum in trust. This is the ground upon which the judgment went against plaintiff. The learned justice says: " I find no evidence of any intent on the part of decedent to pass title to said shares of stock to Miss Tannen-baum, either at the interview in January, 1918, or at any other time."

On the correctness of the decision on this question of fact the case depends. There is no dispute about the law. Plain-tiffs concede that they must show the actual delivery of the fund or other property, or of a legal assignment thereof, with the intention of passing the legal title thereto to Miss Tannen-baum as trustee. (*Brown* v. *Spohr*, 180 N. Y. 201.)

I cannot agree with the learned trial justice that there is no evidence of an intent on the part of the decedent to pass title to the shares of stock to Miss Tannenbaum at the interview in January, 1918, or at any other time. It is true that the gift must be established by satisfactory proof, and if the matter is left in doubt it must fail. (*Bray* v. *O'Rourke*, 89 App. Div. 400.) There is no dispute in this case about the facts as related by Miss Tannenbaum. She is entirely disinterested, actuated solely by motives of loyalty to her dead friend and going so far as to waive any commissions or compensation as trustee. No one contradicts her. The intention to make the gift is very clear. The learned justice at Special Term does not question it. He says there was no evidence of intention to pass title and possession to Miss Tannenbaum at the time; that the decedent did not part with her power of control over the securities and that the gift was testamentary in character.

I cannot find any evidence in the record here that Miss Flanagan ever intended to dispose of the securities by will. She made no will. On the contrary, there was evidence that when a neighbor in the apartment in which she lived sug-gested the desirability of a will, she declined to make one, and said that if anything happened to her, " rest everything with Miss Tannenbaum. Miss Tannenbaum would take care of it." " Anything she had she wished would be delivered to

those four persons." While this might not be effectual as evidence of a trust of her bank account, her furniture and personal belongings, and her securities in the hands of her employers which were never delivered to Miss Tannenbaum, I feel that, coupled with the transaction in January, 1918, and the decedent's conduct thereafter, the evidence negatives any intention to make a testamentary disposition of these particular securities in the hands of her friend. She never attempted to regain possession of these securities, she never exercised any control or supervision of them. Delivery of the trust property is essential, and Judge EARL said in *Jackson* v. *Twenty-third Street R. Co.* (88 N. Y. 526): " The delivery must be such as to vest the donee with the control and dominion over the property, and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee. The intent is a necessary element of the transaction. Delivery, without intent to vest the title in the donee, could pass no title to him." It seems to me that in the case at bar the intent, " a necessary element of the transaction," is abundantly proved. That was her intention at the interview in January, 1918, when she constituted the trust, and the evidence is that she reiterated and reaffirmed it. Miss Tannenbaum testified: " We spoke about it nearly up to the time of her death, the distribution and everything relating to this matter."

In Chaplin on Trusts the author says (§ 83, p. 42): " If the donee, at the time of the gift, already has the custody of the property in question, no physical transfer to him of that property itself is possible or requisite," citing *Mercantile Deposit Co.* v. *Huntington* (89 Hun, 465), where Presiding Justice VAN BRUNT, writing for the General Term, said that where the donee was already in possession of securities it was reasonably strong evidence of delivery in the absence of other proof. In that case the parties, donor and donee, were dead. In the case at bar we are not obliged to depend upon inferences. There is direct proof of the facts. It would have been an idle ceremony for Miss Flanagan to take the securities from Miss Tannenbaum for the purpose of immediately redelivering them. (See, also, *Hamer* v. *Sidway*, 124 N. Y. 538; *Day* v. *Roth*, 18 id. 448, 453; *Allen* v. *Cowan*, 23 id. 502; *Penfield* v. *Thayer*,

2 E. D. Smith, 305.) The Court of Appeals says in *Hoffman House* v. *Foote* (172 N. Y. 348, 355): " It is not necessary to use any particular formula of words in order to create a trust of personal property, and it is not even necessary that such a trust should be evidenced by any writing. Trust relations will be implied when it appears that such was the intention of the parties and when the nature of the transaction is such as to justify or require it. (*Morse* v. *Morse*, 85 N. Y. 53; *Gilman* v. *McArdle*, 99 N. Y. 451; *Day* v. *Roth*, 18 N. Y. 448; *Matter of Carpenter*, 131 N. Y. 86; *Woodward* v. *James*, 115 N. Y. 346; *Gillet* v. *Bank of America*, 160 N. Y. 549.)"

The fact that the stock certificates in the possession of Miss Tannenbaum were issued in the name of decedent and were unindorsed does not militate against the plaintiff's contention. The learned justice at Special Term did not say so, and he cited cases which hold that delivery of an unindorsed certificate is sufficient if made with intent to transfer the title. (*Gilkinson* v. *Third Avenue R. R. Co.*, 47 App. Div. 472; Pers. Prop. Law, § 170; *Talbot* v. *Talbot*, 32 R. I. 72. See, also, *Ridden* v. *Thrall*, 125 N. Y. 572, 577; *Hall* v. *O'Brien*, 218 id. 50, 54; *Chemical Nat. Bank* v. *Colwell*, 132 id. 250; *Johnson* v. *Underhill*, 52 id. 203; *McNeil* v. *Tenth Nat. Bank*, 46 id. 325; *Cushman* v. *Thayer Manufacturing Jewelry Co.*, 76 id. 365, 370; *Allerton* v. *Lang*, 10 Bosw. 362; *Walsh* v. *Sexton*, 55 Barb. 251; *Bond* v. *Bean*, 72 N. H. 444.)

It is stated in the head note in *Herbert* v. *Simson* (220 Mass. 480; L. R. A. 1915 D. 733): "A valid gift so as to pass the equitable title is effected by the delivery and acceptance of a certificate of stock in a corporation with intent to pass title, but without any written assignment or indorsement, although the certificate is made transferable only on the books of the corporation." In that case the testatrix had delivered an unindorsed certificate of stock to Mrs. Simson, who thereafter kept it. The executor asserting ownership, the Probate Court in answer to his request for instructions was of opinion that the failure of the testatrix to indorse the certificate invalidated the gift. But the Supreme Court of Massachusetts reversed the probate judge and held that while the failure to indorse the certificate for transfer was important evidence

bearing on the intention with which the delivery was made, if in fact she intended to make a complete gift and to irrevocably renounce dominion and control of the stock and if Mrs. Simson accepted it as her own property, the gift would be sustained. The court referred to the fact that no rights of creditors or other third parties were involved, but only those of donor and donee, and said that while without the written agreement Mrs. Simson did not acquire the legal title to the shares — the ownership in the sense that no further act was required to perfect her right — she did acquire as between herself and the donor the equitable title to the shares and some legal as well as equitable rights. The gift was complete and not inchoate, and a court of equity had jurisdiction to compel a formal assignment by the executor of the donor and a transfer upon the books of the corporation. The court said: " The general rule is now well established that choses in action, of which the legal or equitable title can pass by delivery, may be the subject of a valid gift. And the delivery of the chose in action, without formal indorsement or assignment, is sufficient to effectuate the gift where it is the intent and purpose of the donor to transfer the ownership at once." The court cited many cases in support of its contention and directed the entry of a decree reversing the Probate Court and instructing the executor that the certificate was the property of Mrs. Simson and directing him to assign it to her.

Nor is the direction that the distribution should not take place until the death of the settlor inconsistent with an intention to create a present trust. (*Talbot* v. *Talbot, supra,* 93.) Judge PARKHURST, writing for the Supreme Court of Rhode Island, in a very learned and interesting opinion in which the authorities are collated (at p. 103) quotes from *Stone* v. *Hackett* (12 Gray, 227–232): " Nor are we able to see any force in the suggestion that the trust which the donor created in some of its features looked to a disposition of the property which was the subject of the gift after his death. We know of no principle of law which renders such a transfer of property *inter vivos* invalid."

I see no reason for nullifying what seems to me to be the obvious intention of the decedent. We have no next of kin

Second Department, December, 1920.          [Vol. 194.

or creditors complaining or objecting. There is no dispute as to the facts. To sustain the trust is not to " overrule the statutes which require that testamentary dispositions of property shall be made in the manner therein prescribed," as suggested by the learned justice at Special Term. This was not a testamentary disposition of property. It may be that the bank balance, the furniture and personal belongings and the Liberty bonds of this dead woman are forfeited to the State, but in my opinion, upon the uncontradicted evidence, there was a valid gift and delivery of these securities to defendant Tannenbaum in trust to be distributed upon her death to the four beneficiaries named.

I do not regard the refusal of Norris to act as the agent of Miss Tannenbaum in making the manual delivery of the securities as of moment. He was at most a messenger or agent to carry out the instructions of the trustee in making actual delivery of the securities.

The appeal from the decision of the court should be dismissed, without costs.

The judgment should be reversed, with costs to plaintiffs, appellants, and to respondents, administrator and Hannah N. Tannenbaum, and judgment directed in favor of plaintiffs, that the securities aforesaid are the property of the plaintiffs and the defendants Annette Norris and Lauretta Norris, in equal shares, one-quarter to each; that Elizabeth Flanagan, deceased, in January, 1918, duly established a trust by which the securities were thereafter held by defendant Tannenbaum for the benefit of said plaintiffs and defendants, to be delivered to them on the death of said Elizabeth Flanagan, and the administrator of said decedent is directed to execute the necessary transfers required to secure the issuance of new certificates. The first, fourth, fifth, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth findings of fact and the first and second conclusions of law of the justice at Special Term are reversed as contrary to the evidence. This court finds the facts as requested by plaintiffs, first, to and including the fourth findings requested. This court reverses the finding of fact of the trial justice of the eighth request to find presented by plaintiffs, and finds in place thereof:

*Eighth.* After the death of said Elizabeth Flanagan, the

plaintiffs and each of them and the defendants Annette Norris and Lauretta Norris duly demanded of the defendant Hannah N. Tannenbaum that she deliver to them the securities in said trust. The defendant Charles F. Norris, asserting that said decedent had left a will in which he was appointed executor, demanded said securities. The decedent left no will and defendant Tannenbaum refused to deliver the securities to said Charles F. Norris, who thereupon refused to distribute said securities as provided in the trust. That this action was thereupon commenced to obtain judgment protecting said Hannah N. Tannenbaum from personal responsibility in making the division of the trust estate as directed by the decedent.

This court finds the conclusions of law as requested by plaintiffs and numbered one to four, and makes the following additional conclusions of law:

*Fifth.* That any income or dividends on the stocks in said trust, accruing prior to the death of said Elizabeth Flanagan, are the property of her estate and should be delivered to the administrator. Such income or dividends accruing after said death are the property of the plaintiffs and defendants Annette and Lauretta Norris.

*Sixth.* The defendant administrator is directed to indorse in the name of the estate of the decedent all unindorsed checks, drafts or other negotiable instruments representing income or dividends from said securities after the death of said Elizabeth Flanagan, and to deliver the same to defendant Hannah N. Tannenbaum as trustee.

*Seventh.* The defendant Hannah N. Tannenbaum individually and as trustee is directed to divide said securities and any income therefrom between the plaintiffs Josephine Orton and Caroline Stewart and the defendants Annette Norris and Lauretta Norris equally, one-quarter to each.

Costs of this appeal are awarded to the appellants and to the defendant administrator and Hannah N. Tannenbaum, respondents.

MILLS and RICH, JJ., concur; PUTNAM, J., reads for affirmance, with whom JENKS, P. J., concurs.

PUTNAM, J.:

The evidence as to deceased's deposit of her securities comes from Miss Tannenbaum, a witness painstakingly accurate. Her unopposed version is that in January, 1918, deceased handed witness stock certificates, and " told me that *in the event of her death* that these securities should be distributed between Miss Orton, Miss Stewart, and the two Norris girls." She declined this burden, and asked that Mr. Norris be selected to make the distribution, but added that " I would see that he made the distribution, so that all interested would be treated squarely." Securities that were acquired later became a part of these deposits. In all instances of sales or reinvestments she first informed deceased of her plans and obtained her authority. All stock certificates stood in deceased's name unindorsed, except one for fifteen shares in the Westinghouse Company, which had been indorsed in blank. The dividends accruing after this interview were sent directly to, and used by, deceased. This mode of conducting the investment continued for the year before Miss Flanagan's death. The court's findings have negatived any gift, or trust or intention of passing title to Miss Tannenbaum. I accept the inference that deceased refrained from making a will, because of this arrangement with her trusted friend.

Miss Tannenbaum's testimony, confirmed by her notation on the indorsed certificate of stock after Miss Flanagan's death, disclaims any claim of gift or title in herself. Her answer in the cause is that of a stakeholder asking to be instructed as to her duty.

However, Miss Tannenbaum was only an agent. She was not a trustee. She had no legal title. The dividends continued to go to deceased as before. In *Mercantile Deposit Co.* v. *Huntington* (89 Hun, 465, 470), Presiding Justice VAN BRUNT in closing his opinion said: " Martha had the property, used it as her own, received the income and deposited it to her own credit in her individual account."

The test to distinguish a bailee, custodian or agent from a trustee primarily is, that the donor has completely divested himself of the title to the property and to its increase. (*Wadd* v. *Hazelton,* 137 N. Y. 215.) There must be an executed gift

of the equitable title, without any reference to its taking effect at a future time.

These rulings are often applied to savings bank deposits, where the depositor showed no intention of relinquishing present and future dominion over the fund, but the real intention disclosed was that the deposit should only pass on the depositor's decease. (*Bath Savings Inst.* v. *Fogg*, 101 Maine, 188.)

A court of equity cannot supply these vital essentials in favor of a volunteer, as are these plaintiffs. (26 R. C. L. " Trusts," § 21.)

I lay no special stress on the circumstance that deceased indorsed only one of these stock certificates. The greater evidence of retained title lies in her continued use and enjoyment of the dividends.

The conversations between deceased and Miss Tannenbaum regarding these shares of stock were insufficient to pass title, as the attributes of a present gift were wanting, and, therefore, did not effect a valid trust. Hence, in my opinion, Miss Flanagan during this whole period, and until she died, was the legal proprietor of this stock and no beneficial interest therein vested in the plaintiffs, since, as volunteers, they cannot enforce their supposed equity in an incomplete gift. (*Milroy* v. *Lord*, 4 De Gex, F. & J. 264; approved in *Wadd* v. *Hazelton, supra,* 220.)

I am constrained, therefore, to vote to affirm.

JENKS, P. J., concurs.

Judgment reversed, with costs to plaintiffs, appellants, and to respondents, administrator and Hannah N. Tannenbaum, and judgment directed in favor of plaintiffs, in accordance with opinion by KELLY, J. Appeal from the decision dismissed, without costs. Settle order before Mr. Justice KELLY.