that "they" would withdraw the charge if the plaintiff would release "them." This testimony was relevant and material to the question of malice. Fitzjohn v. Mackinder, 9 C. B. (N. S.) 505, 530. It was competent under the facts shown as to Henry's authority in the premises and as part of the res gestæ of the criminal prosecution. Scott v. Railroad Co., 86 N. Y. 200, 208; Wild v. Mining Co., 59 N. Y. 644; Vanderbilt v. Mathis, 5 Duer, 304. The ruling does not offend Fagnan v. Knox, supra, for the question there related to a repayment of a deficit, which was, of course, no evidence of belief that no crime had been committed. The refusal to permit an answer to the question put by the defendant to its secretary, "What was the first thing you heard in reference to Scott's doing anything wrong in the Fourteenth street place?" was error. Owens v. Lumber Co., 38 App. Div. 53, 55 N. Y. Supp. 913. But the error was harmless, inasmuch as the defendant immediately elicited all of the facts within the scope of the question theretofore excluded.

We have examined the other exceptions, and none has any merit. The amount of damages should not be disturbed. Damages in these cases may be based upon injury to person, reputation, and to pocket. Add. Torts, 230; Newell, Mal. Pros. The testimony of the plaintiff warranted the consideration of all these elements. The amount of damages affords no evidence in this case of intemperance in the minds of the jury, which necessarily, in this as in all cases of tort, had a broad discretion. The charge to the jury stands without exception, and is as considerate of the defendant as the law allows. The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.

---

## WILLIAMS v. BROOKLYN SAV. BANK et al.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

1. TRUSTS—DECLARATION—SAVINGS BANK DEPOSIT.
   Where decedent deposited money belonging to him in a savings bank, in his own name, as trustee for his brother, and died before him, leaving the account open and unexplained, such act constituted an unequivocal declaration of trust, which the brother was entitled to have considered as evidence of decedent's intent to create a trust.

2. SAME—EVIDENCE.
   Decedent, who died possessed of an estate of about $20,000, left a savings bank account for $2,700, entered in his own name as trustee for an indigent brother, whom he regarded as unfortunate, and to whom he had occasionally sent money. At the same time he opened another account as trustee for a favorite grandson, which, at his death, amounted to $3,432, and his only other kindred was a daughter, from whom he was estranged. Decedent retained the pass books for both accounts, and did not notify the brother previous to his death, with whom he had no personal association, of his intent to create a trust for his benefit. Decedent also had an account in his own name in the same bank, and another account in his own name in another bank. Held, that such facts showed the creation of a valid trust in favor of the brother.

Appeal from special term, Kings county.

Action by Owen Williams against the Brooklyn Savings Bank and others to establish a trust of a savings bank deposit. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Edward F. Dwight, for appellant.

John D. Snedeker, for respondent Brooklyn Sav. Bank.

Charles H. Kelby, for respondents Sarah J. Goodrich and another.

JENKS, J. On May 7, 1894, William Williams deposited $2,700 in the Brooklyn Savings Bank in these terms, "William Williams, Trustee for Owen Williams," and died in March, 1896, leaving this account open. Owen Williams sued to establish the trust, and appeals here from a judgment of the special term directing the defendant the Brooklyn Savings Bank to pay to the administrators of William Williams, deceased, the money to the credit of the account. The precedents are clear and cogent that this language of deposit was a plain declaration of trust in favor of Owen Williams. Martin v. Funk, 75 N. Y. 134; Boone v. Bank, 84 N. Y. 83; Willis v. Smyth, 91 N. Y. 297; Mabie v. Bailey, 95 N. Y. 206; Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373; Decker v. Savings Inst., 15 App. Div. 553, 44 N. Y. Supp. 521. The learned justice presiding at special term filed his decision that "from the facts and surrounding circumstances proved in this case, I find that William Williams never intended to create a trust for the benefit of his brother, Owen Williams, the plaintiff herein, when he opened the account in suit; and in fact that no such trust ever was created." He held that: "There was no formal, technical declaration of trust, which, standing alone, did, as matter of law, create a trust. The form in which the deposit was made, the money being the depositor's own, is only a circumstance equivocal at best, to be considered in connection with the accompanying circumstances in determining, as matter of fact, whether a trust was intended." But in Decker v. Savings Inst., supra, this court, considering substantially similar language,— "William F. Du Bois, Trustee for Ellenora H. Decker,"—used under similar circumstances, said, per Hatch, J., "It constitutes an unequivocal declaration of trust in favor of the beneficiary." In this case the death of the depositor and the life of the beneficiary are admitted. If the plaintiff had read in evidence this declaration of deposit, the law would thereupon have raised the presumption that there was a plain declaration of trust for him; and, if no further evidence had been adduced for or against the plaintiff, he would have made a prima facie case. The application of such a presumption is stated by Prof. Thayer in his book upon Evidence (page 316):

"The question of intention is not closed to evidence by this rule. The matter lies wholly open. But in applying the law a certain prima facie effect is given to particular facts, and it is not merely given to them once, by one judge on a single occasion, but it is imputed to them habitually, and by a rule that is followed by all judges and recommended to juries, and even laid down to juries as a binding rule of law."

This declaration might have been or might not have been con-
clusive, for it is but evidence of the intent to create such a trust,.
inasmuch as divers motives might have dictated such a deposit.
Therefore the intention of the depositor is a question of fact to be
determined upon a consideration of the facts and circumstances that
marked the transaction.   Decker v. Savings Inst., supra.   The theory
of the case is tersely put by Hirschberg, J., in an opinion adopted
by this court in Board of Domestic Missions of Reformed Church
in America v. Mechanics' Sav. Bank, 40 App. Div. 120, 122, 54 N.
Y. Supp. 30, and 57 N. Y. Supp. 582:

> "The cases all turn on the question of intent, which, in the absence of other
> explanation, is controlled by the terms of the deposit."

Even if it be true that the language of the deposit raise but a pre-
sumption,—that is, it but presupposes a certain fact, namely, that
at the time of the deposit there was made a plain declaration of
trust in favor of the beneficiary named, which is to be considered
with the other facts,—yet the plaintiff was entitled to the full value of
this fact.   The depositor died before the beneficiary named, and left
the account open and unexplained.   Upon weighing the evidence, the
learned court should have cast into the scale of the plaintiff this
unequivocal declaration of trust.   This it did not do, for it has held
that "the form in which the deposit was made, the money being the
depositor's own, is only a circumstance equivocal at best."   Therefore,.
in this review, we must first restore the full value that the law gives.
to this declaration, and then consider the whole case presented upon
the appeal.   The facts are not in dispute.   William Williams ap-
pears as a frugal old man, lodged for $6 a month, fed at eating houses,.
and supported by the income of the accumulations of a thrifty life..
He left a property of about $20,000, exclusive of the deposit in ques-
tion and also of another deposit of $3,432.   His kindred were a
younger brother,—this plaintiff,—a married daughter, and a grand-
son, the son of a dead daughter.   This plaintiff, who was well on in.
years, and crippled, lived in England, and earned about 23 shillings
a week for support of his family.   The relations of the brothers were
very friendly.   They corresponded (not frequently, for the plaintiff
seems to have been rather illiterate, and to have been troubled with
his eyes), and William told the witness Clark that he was accus-
tomed to send newspapers to Owen every week.   To this witness—
his intimate friend of 30 years' standing—he spoke of Owen as a
sufferer from misfortune, and as a subject for pity.   Occasionally
William sent to Owen sums of four or five pounds sterling.   At one
time, about a year before he died, he remitted $100.   The testimony
shows that William Williams and his daughter were estranged.   To
Clark he forbade any mention of her name.   When he was very ill,.
and was told that the end was near, he was asked if he did not wish
to see his daughter, whereupon he answered, "No, don't bring her
near me."   But he took a lively interest in his grandson, a young
man of 21 years of age, and showed affection for him.   In January,.
1894, he had made a deposit of $1,379 in the Brooklyn Savings Bank,.
in terms as follows:  "William Williams, in Trust for William F.

Hallett," which was, at his death, open and unexplained. We think that his circumstances, his surroundings, his affections, and his antipathy, are all consistent with an intent to make beneficiaries of the two persons that are named in these respective declarations of trust. If his affection pointed them out, his judgment as well might have told him that one was needy and both were deserving. So far as his personality is shown by the evidence, his action now under review was characteristic. For the fashion of it still left the money under his eye, and, in a sense, under his control as trustee, while none about him was the wiser, either of his act or of his accumulations. When he died, his brother and his nephew, those whom he loved best, would learn that he had not forgotten them, for there were the trusts in the bank that he had created, and that he would leave behind him.

Certain circumstances are relied upon by the defendant bank to uphold the judgment. It is urged that the depositor retained the pass book; but it must be remembered that the question is of a trust, not a gift, and that, if the depositor were a trustee, he was the proper custodian. In Martin v. Funk, supra, the court, per Church, C. J., after deciding that the declaration was sufficient to pass the title, said:

"The retention of the pass book was not necessarily inconsistent with this construction. She must be deemed to have retained it as trustee. The book was not the property, but only the voucher for the property, which, after the deposit, consisted of the debt against the bank."

The respondent also calls attention to the fact, upon which the learned justice seems to lay stress, that plaintiff was not notified of the deposit by the depositor. But knowledge of the beneficiary was not essential. Moreover, there was no personal association of the brothers, for this plaintiff lived across the sea. In Martin v. Funk, supra, the court also said: "In this case the intestate might have notified the objects of her bounty, but this is not regarded as indispensable by any of the authorities;" citing Richardson v. Richardson, L. R. 3 Eq. 686. See, too, Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257; Perry, Trusts, § 98, and cases cited. The respondent regards it as significant that William Williams at about the same time made deposits in certain other accounts, respectively approximating $3,000. It appears that on the day of the deposit in question he had an account in the same bank of $3,172, and the third account entitled "William Williams, in Trust for William F. Hallett," and that in the latter account he then deposited $1,521, making the total thereof $3,000. On the same day he also opened an account of $2,415 in another savings bank in his own name. It may be assumed that the deposits were the major part of the proceeds of certain mortgages called in. Inasmuch as the interest limit of this bank was $3,000, it is argued from these facts that these accounts were opened to gain interest. But, the argument at best is speculation upon a possible motive. There were other savings banks open to him. We have seen that on the same day the depositor made a deposit in another savings bank, and this tends to refute inference of his ignorance of the existence of other banks, or of his exclusion

of them. Moreover, if he sought a scheme to gain interest, he could have deposited $3,000, instead of $2,700, in this particular account under discussion, out of the $7,482 received by him on that day. The argument based upon a scheme for interest does not carry any special force in any given case, for it is available in every case where the depositor's own funds in the same bank have reached the limit. It has not received much consideration where the depositor has named a beneficiary of the trust. Mabie v. Bailey, 95 N. Y. 206, 210, 211; Decker v. Savings Inst., 15 App. Div. 553, 44 N. Y. Supp. 521. The withdrawals, within a year after the deposits, amounting to $105, are hardly a legitimate part of the res gestæ, for at most they would indicate a change of purpose, and not the original intent. Mabie v. Bailey, 95 N. Y. 206, 211; Hyde v. Kitchen, 69 Hun, 280, 23 N. Y. Supp. 573. None of the cases cited by the learned counsel for the respondent applies. In Cunningham v. Davenport, supra, and in Haux v. Savings Inst., 2 App. Div. 165, 37 N. Y. Supp. 917, the respective depositors survived the respective beneficiaries named, and denied the trusts. In Re Mueller, 15 App. Div. 65, 44 N. Y. Supp. 280, there was clear admission, against interest, of the purpose of the deposit. In Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, it was held that the title turned upon a gift rather than upon a trust. See Cunningham v. Davenport, 147 N. Y. 47, 41 N. E. 412, 32 L. R. A. 373.

Upon a careful examination of all the facts, we are constrained to hold that the decision is against the weight of evidence, that the judgment should therefore be reversed, and that a new trial should be ordered; costs to abide the final award of costs. All concur.