---

(54 App. Div. 103.)

ROBERTSON v. McCARTHY.

(Supreme Court, Appellate Division, Second Department. October 12, 1900.)

1. TRUSTS—UNDISCLOSED DEPOSITS—INTENT—WITHDRAWAL OF DEPOSIT.

Where money is deposited in bank in the name of the depositor in trust for his brother, but the latter is not notified of such deposit, and the depositor keeps the pass book, the deposit creates an irrevocable trust in favor of the brother, in the absence of proof that such was not the intent of the depositor, which trust cannot be defeated by the depositor afterwards withdrawing the money.

2. SAME—PRESUMPTION—SUFFICIENCY OF EVIDENCE.

Evidence that a depositor who made an undisclosed deposit of money in his own name, in trust for his brother, afterwards stated that he had made a mistake, and would correct it, but the nature of the mistake, and whether it was of law or fact, was not shown, was not sufficient to rebut the presumption that he intended to create an irrevocable trust in favor of the brother at the time when the deposit was made.

Appeal from trial term, Kings county.

Action by Harriet S. Robertson, as executrix of Cornelius S. Robertson, against Libbie Robertson McCarthy, as administratrix of Stout Robertson, to recover a trust deposit. From a judgment in favor of the plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Charles H. Otis, for appellant.

Richard Cohn, for respondent.

HIRSCHBERG, J. On the 7th day of July, 1898, an account was opened in the Bowery Savings Bank, for the sum of $3,000, in the name of "Stout Robertson, in trust for Cornelius S., brother." It seems to be conceded that the money deposited was the individual property of Stout Robertson. The pass book was delivered to Stout Robertson, and remained in his possession until his death, which occurred on the 20th day of February, 1899, and it was admitted upon the trial that his brother, Cornelius S., "had never been informed and never had any knowledge of the existence of this bank account in the name of Stout Robertson, in trust for Cornelius S. Robertson, until after the death of Stout Robertson, and the appointment of the administrator of his estate." The administrator of the estate of Stout Robertson delivered the bank book to Cornelius S. Robertson, upon the latter's demand, after his brother's death, and no question is made as to the balance then remaining on deposit. Stout Robertson, however, drew from this account the sum of $2,000 on the 3d day of January, 1899, and converted the same to his own use, and this action was brought by Cornelius S. Robertson in June, 1899, to recover that sum, with interest. Cornelius S. Robertson having died on the 12th day of August, 1899, the action was continued by

the plaintiff as his executrix, and has resulted in a judgment in her favor. Cornelius S. was poor, while Stout Robertson was worth about $10,000. The wife of Stout Robertson died in May, 1898, leaving no children or descendants.

The only question presented on the appeal is whether the facts stated establish the creation of an irrevocable trust in the entire deposit on July 7, 1898, the depositor then irreclaimably devesting himself of the beneficial ownership. On behalf of the defendant it is claimed that the depositor, retaining the pass book with the trust undisclosed, thereby reserved the right to reduce the amount of the deposit at will, and that, taking in view the entire transaction, his intent must be assumed to have been to create a trust only in so much of the fund as remained on deposit at the time of his death. I think the question of law is settled in this state in favor of the plaintiff. The intent of the depositor at the time of the deposit determines the nature and legal effect of the act, and all the surroundings, facts, circumstances, and declarations will be taken into consideration on the question of intent; but the deposit in the form of a trust, unqualified and unexplained, creates a trust at the time, which, once legally established, cannot be revoked, in the absence of a reservation of the power of revocation. The precise question involved in this appeal was decided by the general term in this department in Scott v. Harbeck, 49 Hun, 292, 1 N. Y. Supp. 788. In that case the entire fund, after being deposited by the owner in her own name in trust for the plaintiff, was drawn out by the depositor, and converted to her own use, and a judgment against her estate for the amount so drawn out and converted was upheld and affirmed. That the mere deposit in the form referred to, without qualification or explanation, creates a valid trust, has been frequently decided by the courts; the latest instances being the cases of Williams v. Bank, 51 App. Div. 332, 64 N. Y. Supp. 1021, and Harrison v. Totten, 53 App. Div. 178, 65 N. Y. Supp. 725. And in Decker v. Institution, 15 App. Div. 553, 44 N. Y. Supp. 521, it was expressly held by this court that such a trust, when once established, could not be revoked by the party creating it.

A re-examination of the authorities confirms the accuracy of these decisions. In the leading case of Martin v. Funk, 75 N. Y. 134, the court held that a deposit of funds in the name of the owner, in trust for another, the depositor retaining the pass book, and not disclosing to the beneficiary the fact of the deposit, constituted a valid declaration of trust. The court, however, said (page 143): "It is not necessary to decide that surrounding circumstances may not be shown to vary or explain the apparent character of the acts, and the intent with which they were done. The facts developed may not be so unequivocal as to be regarded as conclusive." The court suggested that the depositor "may have believed that the deposits might be withdrawn during her life, and the money converted to her own use. It is not clear that she entertained such a belief, but, if she did, it would not change the legal effect of her acts."

In Willis v. Smyth, 91 N. Y. 297, it was held that the fact that the depositor drew the interest from time to time, and presumably used

it for her own purposes, did not detract from the character in which she held the deposit as trustee. The court said (page 301): "She may not have been aware that she had no right to draw from the trust fund, but that fact would not take away the character which she had given to that fund."

In Mabie v. Bailey, 95 N. Y. 206, the court of appeals affirmed a recovery by the donee against the estate of the donor for the entire deposit which had been drawn out by the depositor during his lifetime. It is true that in this case there were facts other than the deposit itself to indicate that the donor at the time of the deposit intended to devest himself of the beneficial interest in the fund. But there was no suggestion that the trust would not have been sufficiently established without the aid of these extraneous facts. On the contrary, the court said (page 210):

"These facts, which were proved without contradiction, confirm the proof furnished by the bank books and pass book of the creation of a trust, and exclude the supposition that the transaction was not intended to be that which the written evidence, unexplained, imports."

And while it was suggested that the mere fact of the deposit was not such conclusive proof of the creation of a trust as to preclude evidence of contemporaneous facts and circumstances constituting the res gestæ, and indicating some other motive, it was made quite clear that the subsequent withdrawal of the fund by the depositor could in no respect impair or destroy the trust originally created. The court said (page 211):

"The fact that the deposits for the plaintiff and others were subsequently, in 1867, drawn out by Dr. Bailey, is not legitimate evidence that he did not intend when the deposits were made to create a beneficial trust for the beneficiaries named. If the withdrawal was with intent on his part to ignore the trust, and to convert the money to his own use, it might be competent evidence of a change of purpose, but it throws no light on the original transaction. We think the facts shown on the part of the defendant, if competent at all, were so vague and indeterminate that they cannot be considered as raising a conflict as to the intention of the testator, or in weakening the strong affirmative evidence of intention given on the part of the plaintiff. The court was therefore justified in refusing to submit the question to the jury. The trust once established, and no power of revocation having been reserved, it was, within the authorities, irrevocable. Minor v. Rogers, 40 Conn. 512, 16 Am. Rep. 69; Martin v. Funk, supra."

In Re Mueller, 15 App. Div. 67, 44 N. Y. Supp. 280, Presiding Justice Goodrich summarized the decisions as follows (page 69, 15 App. Div., page 281, 44 N. Y. Supp.):

"There is no question that, by the law of this state, whenever a deposit is made in a savings bank by a person in his own name in trust for another, and there are no circumstances rebutting the presumption, it will be conclusively presumed that the depositor has devested himself of the legal and beneficial title to the fund, and has vested himself with the legal title as trustee for the person named as cestui que trust. Martin v. Funk, 75 N. Y. 134; Boone v. Bank, 84 N. Y. 83; Willis v. Smyth, 91 N, Y. 297; Mabie v. Bailey, 95 N. Y. 206; Fowler v. Bank, 113 N. Y. 450, 453, 21 N. E. 172, 4 L. R. A. 145; Beaver v. Beaver, 117 N. Y. 421, 423, 22 N. E. 940, 6 L. R. A. 403."

In Decker v. Institution, supra, it was held that where a deposit was originally made by the owner of a fund with the intention of

creating a trust in favor of his sister, he could not thereafter lawfully transfer the account to and for the benefit of his wife.

The defendant insists that the effect of the recent case of Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, is to modify some of the views expressed in former opinions of the court of appeals, and to overrule the case of Scott v. Harbeck, supra. I do not so understand the decision. The court found in that case, in the testimony of the depositor himself given on the trial to the effect that when he deposited his money in his own name in trust for his brother he had no intention of giving the latter the money or of permitting him to derive the benefit of it, "a full and complete explanation by the living depositor of his intentions" which negatived the presumption of the creation of a trust. In all the cases on the subject of these deposits the courts have held that the intention existing at the time of the deposit should control, and it was therefore proper for the individual by whom the deposit was made to testify on the subject of his intention. Notwithstanding the terms of the deposit, his disclaimer was accepted, and the conclusion reached that "the opening of the account, as now explained, did not create a trust." But that there was no thought of limiting in any way the effect of the prior decisions by either the reasoning or the result in the Cunningham Case is apparent from the more recent decision in Farleigh v. Cadman, 159 N. Y. 169, 53 N. E. 808, wherein the principles governing the former cases are reiterated and affirmed. The ruling in the case of Mabie v. Bailey, supra, followed in Scott v. Harbeck, supra, certainly has not been disturbed, and these decisions would seem to be controlling and conclusive in the determination of this appeal.

The defendant, however, produced a witness upon the trial who testified to conversations with Stout Robertson shortly before his death, and it is claimed that the declarations then made should be permitted to destroy the trust, at least to the extent of the $2,000 drawn from the bank in January, 1899. The material portion of the testimony referred to is as follows:

"I had a number of conversations with Mr. Robertson, which he brought up himself, regarding the disposition of his money. Mr. Robertson's wife had died previous to that, and he was kind of homeless, and thinking of these things; and the question which I had more forcibly brought to my mind than anything else was the fact that he was going to make a will, and make a division of his money, and he mentioned the way he proposed to make that division. That conversation, I remember distinctly, was in Washington, at an interview that I had there with him when he had met me at the table. Q. Can you tell about when that was? A. Yes; I know that was about the early part of November, 1898. He told me that he had been contributing to his brother's support from time to time, and that if anything should happen to him, and he should die suddenly, his brother would need some money to carry him along while his estate was being settled, and he proposed to leave some money that way. Now, I don't remember any other particular conversation of Mr. Robertson about that matter. I didn't talk with him very much about it—indeed, I did not want to encourage the conversation—until Christmas Day, at my residence in Brooklyn, when he spoke to me casually about having made some arrangement for his brother, Corneil; and he asked me particularly—this I remember—as to whether I thought, in case he had left money that way, whether it would come to his brother in addition to his regular interest in the estate; and I told him that I thought it would; and he told me that he had made a mistake, and would correct it;

and I don't remember. Shortly after that Mr. Robertson went to Washington, and I never saw him again until he died."

On cross-examination he testified:

"He told me that he was going to leave some money, so that he could have some money immediately available, in case he should die without a will. Q. Did he say he was going to or had done that? A. Well, now, that is a question that I can't answer; I don't remember whether he said he had or was going to."

Assuming that this evidence was competent on the defendant's behalf, and that it relates to the bank account in question, it is apparent that it does not tend to prove that Stout Robertson on the 7th day of July, 1898, when he opened the account, did not intend to create a trust in the entire fund for his brother's benefit. What the "mistake" was does not appear, nor whether it was of law or of fact. It does not appear in what manner it was to be corrected. Stout Robertson did not in fact make a will, and no direct allusion is made in the conversations to any purpose of drawing out money from the bank account. The declarations are certainly more consistent with the theory that at the time of the original deposit he intended to give the whole fund to his brother than that he only designed him to have what should be left when he died. The learned trial justice, after hearing and weighing the evidence, has found as a fact that the money when deposited became the property of Cornelius, and there is nothing in the subsequent declarations which either requires or justifies a reversal of that conclusion. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.