AUGUSTA A. MEISLAHN, Respondent, *v.* ALBERT MEISLAHN and GEORGE THEODORE MEISLAHN, as Executors, etc., of ALBERT MEISLAHN, Deceased, Appellants.

HENRIETTA PIRNIE, Respondent, *v.* THE SAME, Appellants.

EMMA D. SCHULEMAN, Respondent, *v.* THE SAME, Appellants.

*Deposit in a savings bank account " in trust for" a person named — when it entitles such person to the deposit — action to recover the deposit from the depositor's executors — the plaintiff therein may testify, in a similar action brought by her sister, to personal transactions with the depositor.*

A deposit in a savings bank, "In account with Albert Meislahn, in trust for Augusta A. Meislahn," coupled with proof that Albert Meislahn, who was the father of Augusta A. Meislahn, after making the deposit told a witness that "he had money in trust for the girls," establishes an intention on his part to create a trust for Augusta A. Meislahn, notwithstanding the fact that the father had made deposits in his own name in a great majority of the savings banks of the city, and also other deposits "in trust for" other daughters, most of which deposits in his own name as well as the alleged trust accounts he increased from time to time to $3,000, respectively, the highest sum producing interest, and that the accumulations of interest on all the accounts were deposited indiscriminately in his business account in a trust company.

The fact that Augusta A. Meislahn has brought an action against her father's executors to recover the pass books representing such deposits, does not render her incompetent, under section 829 of the Code of Civil Procedure, to testify, in an action brought by another daughter, to establish title to a similar deposit, that on one occasion, when her father was "fixing the interest," she saw the deposit books in his possession, and that he said, "This money I have in trust for you girls but you cannot get it now, and when I am dead nobody can get this but you."

APPEAL by the defendants, Albert Meislahn and another, as executors, etc., of Albert Meislahn, deceased, from judgments of the Supreme Court in favor of the plaintiffs in each of the above-entitled actions, entered in the office of the clerk of the county of Kings on the 5th day of May, 1900, upon the decision of the court rendered after a trial at the Kings County Special Term.

The three actions were tried at the same term.

*Stillman F. Kneeland,* for the appellants.

*Charles D. Ridgway,* for the respondents.

JENKS, J.:

Augusta A. Meislahn's action is brought against executors to obtain ten pass books in their possession, representing $26,000 of deposits

in ten savings banks of the city of New York, on the ground that the books represent moneys deposited by defendants' testator in trust for the plaintiff. The depositor, the father of the plaintiff, died in 1899, seized of realty of value in excess of $100,000, and possessed of personalty valued at $189,000. His will, in effect, divided this property equally among his children, three sons and two married daughters, beside this plaintiff, his youngest daughter, who was unmarried. He left similar trust accounts of $17,000 and of $14,000 in favor of his daughters, Mrs. Pirnie and Mrs. Schuleman, respectively.

The intention of the depositor is one of fact to be determined upon consideration of the facts and circumstances that marked the transaction. (*Williams* v. *Brooklyn Savings Bank*, 51 App. Div. 332; *Robertson* v. *McCarty*, 54 id. 103.) On the facts, the question before us is whether the proof of the defendants so clearly preponderates that we reasonably can say that the trial court erred in its conclusion. (*Stokes* v. *Stokes*, 155 N. Y. 581, 591.) The terms of the deposit, after the name of the particular bank, were " In account with Albert Meislahn, in trust for Augusta A. Meislahn," and the depositor died leaving the account open and unexplained. And so the plaintiff comes with an unequivocal declaration of trust in her favor, expressed in the language of the deposit. (*Williams* v. *Brooklyn Savings Bank*, *supra*, and authorities cited; *Harrison* v. *Totten*, 53 App. Div. 178; *Robertson* v. *McCarty*, *supra*.) The defendant executor, Albert Meislahn, examined on plaintiff's behalf, testified that between 1896 and 1900 he had several conversations with his father, the testator, who told the witness that " he had money in trust for the girls." This is a declaration of intent that strengthens the plaintiff's case. (*Cunningham* v. *Davenport*, 147 N. Y. 43; *Mabie* v. *Bailey*, 95 id. 209.) A discrimination was made in favor of this plaintiff, who had been the caretaker of the testator for sixteen years, against the daughter Mrs. Pirnie by some $9,000, and against the daughter Mrs. Schuleman by some $12,000. The first one of these trust accounts was opened in 1871 by the deposit of $5 of the plaintiff's own money. There were no similar trust accounts opened in favor of any of the three sons, save that there was a small amount once deposited in Henry's name, which was taken out within the year.

To overthrow the case of the plaintiff the defendants rely mainly

upon inferences drawn from the various transactions of the plaintiff's testator. It is true that the testator made deposits in his own name in a great majority of the savings banks in the city, which deposits he increased, from time to time, to $3,000 respectively, the highest sum producing interest, and that he did this in almost all of the banks wherein were these alleged trust accounts. But touching a similar course in *Williams* v. *Brooklyn Savings Bank* (*supra*) we said: "But the argument, at best, is speculation upon a possible motive. * * * It is available in every case where the depositor's own funds in the same bank have reached the limit. It has not received much consideration where the depositor has named a beneficiary of the trust. (*Mabie* v. *Bailey, supra,* 206, 210, 211; *Decker* v. *Union Dime Savings Institution,* 15 App. Div. 553, 555.)" Though he went far to exhaust the number of savings banks, there were some still open to him.

The learned counsel for the appellants urges that the accumulations of interest, both on the testator's individual accounts and on the accounts in suit, were deposited by the testator in his business account in the Union Trust Company, indiscriminately ("where they drew 2% interest on daily balances"), and on the arrival of a new interest-bearing period in the savings banks, such accumulations were redeposited in the savings banks, and that when the rate of interest in the trust company was reduced, he drew therefrom to swell the various accounts in the savings banks. Even so, this is but evidence that the individual and the trustee, as well, manipulated both his own money and the trust money so as to obtain the largest gains. Now the times named by the learned counsel for advantageous deposits in savings banks are January first to tenth, April first to third, July first to tenth and October first to third, and it appears that the account of the testator in the said trust company showed these successive balances, namely: 1897, July 30, $15,548; December 6, $15,880; 1898, February 2, $24,102; August 5, $27,065; 1899, February 24, $28,500. This does not sustain the appellant's theory. But in any event, neither the retention of the pass book nor the drawing of the interest detracts from the character in which the testator held these deposits, or "throws light" on the original transaction. (*Willis* v. *Smyth,* 91 N. Y. 297, 300; *Robertson* v. *McCarty, supra,* and authorities cited.)

Several memoranda written by the testator were read in evidence, and it is contended that it is thus shown that the testator made no discrimination between his individual and his trust accounts. This is necessarily true so far as those memoranda are concerned, because they contain nothing but a list of banks, with certain sums set opposite to them, respectively. They bear no dates. They contain neither note of explanation nor of connection. Why they were written, or when, does not appear. They afford food for speculation and ground for guesswork, but are at most mere isolated items. The most that can positively be said is, that sometime the testator set down the names of certain banks and certain sums of money opposite thereto.

The cases of Pirnie and Schuleman against these defendants, which were argued at the same time, present similar features, save that they are strengthened by the sister, Augusta Meislahn, who, in the first case named, testified that on one occasion, when her father was " fixing the interest," she saw the deposit books in his possession in his house. He said : " This money I have in trust for you girls, but you cannot get it now, and when I am dead nobody can get this but you." She further testified that she had seen the books about twice a year, and that she had seen them shortly before her father died. This testimony was substantially repeated in the second case, with the additional statement that the witness had seen the books in July, 1899. The exception to this testimony as incompetent, under section 829 of the Code of Civil Procedure, is not well taken. The evidence was not offered on her behalf or in her interest. The defeat of the plaintiffs meant the increase of the estate to her benefit as one of the general devisees under the will. The fact that she had a separate action against the defendants in which she sought to establish her title to certain other bank books did not place her within the prohibition of the statute. (*Rix* v. *Hunt*, 16 App. Div. 540, 549, and authorities cited; *Baxter* v. *Baxter*, 13 id. 65, 67.)

The judgments must be affirmed.

All concurred.

Judgments affirmed, with costs.