MEISLAHN v. MEISLAHN et al.    PIRNIE v. SAME.    SCHULEMAN v. SAME.

(Supreme Court, Appellate Division, Second Department. December 14, 1900.)

1. TRUSTS—ESTABLISHMENT—EVIDENCE.

Decedent deposited money in various savings banks in his name, in trust for each of his daughters, retaining the pass books, and his son testified that decedent had told him he had money in trust for the daughters. The evidence showed that decedent had deposited money in many savings banks, which amounts had reached the limit on which interest was paid, and their deposits were made in trust. Decedent deposited the interest on these deposits, indiscriminately with his own, with a trust com-

pany, and again deposited them in savings banks. Memoranda in decedent's handwriting were introduced giving names of banks and amounts of money, but undated, and with no explanations as to their meaning. *Held*, that such funds were trust funds.

2. WITNESSES—TRANSACTIONS WITH DECEASED PERSONS—COMPETENCY.

Where, in an action to recover pass books of trust funds from the executors of the estate of plaintiff's father, the fact that plaintiff's sister had brought a similar action to recover other pass books did not bring the sister within provisions of Code Civ. Proc. § 829, providing that persons in interest shall not be witnesses concerning personal transactions with deceased persons, since, if plaintiff recovered the pass books, it would diminish the sister's share of the estate, and hence she was a competent witness to prove that such funds were trust funds.

Appeal from special term, Kings county.

Actions by Augusta A. Meislahn, Henrietta Pirnie, and Emma D. Schuleman against Albert Meislahn and another, as executors. From judgments for plaintiffs, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Stillman F. Kneeland, for appellants.
Charles D. Ridgway, for respondents.

JENKS, J. Meislahn's action is brought against executors to obtain 10 pass books in their possession, representing $26,000 of deposits in 10 savings banks of the city of New York, on the ground that the books represent moneys deposited by defendants' testator in trust for the plaintiff. The depositor, the father of the plaintiff, died in 1899, seised of realty of value in excess of $100,000, and possessed of personalty valued at $189,000. His will, in effect, divided this property equally among his children, three sons and two married daughters, besides this plaintiff, his youngest daughter, who was unmarried. He left similar trust accounts of $17,000 and of $14,000 in favor of his daughters Mrs. Pirnie and Mrs. Schuleman, respectively.

The intention of the depositor is one of fact, to be determined upon consideration of the facts and circumstances that marked the transaction. Williams v. Bank, 51 App. Div. 332, 64 N. Y. Supp. 1021; Robertson v. McCarty, 54 App. Div. 103, 66 N. Y. Supp. 327. On the facts, the question before us is whether the proof of the defendants so clearly preponderates that we reasonably can say that the trial court erred in its conclusion. Stokes v. Stokes, 155 N. Y. 581, 591, 50 N. E. 342. The terms of the deposit, after the name of the particular bank, were, "In account with Albert Meislahn, in trust for Augusta A. Meislahn," and the depositor died leaving the account open and unexplained. And so the plaintiff comes with an unequivocal declaration of trust in her favor, expressed in the language of the deposit. Williams v. Bank, supra, and authorities cited; Harrison v. Totten, 53 App. Div. 178, 65 N. Y. Supp. 725; Robertson v. McCarty, supra. The defendant executor, Albert Meislahn, examined on plaintiff's behalf, testified that between 1896 and 1900 he had several conversations with his father, the testator, who told the witness that "he had money in trust for the girls." Here is a declaration of intent that strengthens the plaintiff's case. Cunning-

67 N.Y.S.—31

ham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373; Mabie v. Bailey, 95 N. Y. 209. A discrimination was made in favor of this daughter, who had been the care taker of the testator for 16 years, against the daughter Mrs. Pirnie, by some $9,000, and against the daughter Mrs. Schuleman by some $12,000. The first one of these trust accounts was opened in 1871 by the deposit of $5 of the plaintiff's own money. There were no similar trust accounts opened in favor of any of the three sons, save that there was a small amount once deposited in Henry's name, which was taken out within the year.

To overthrow the case of the plaintiff, the defendant relies mainly upon inferences drawn from the various transactions of the plaintiff's testator. It is true that the testator made deposits in his own name in a great majority of the savings banks in the city, which deposits he increased, from time to time, to $3,000, respectively, the highest sum producing interest, and that he did this in almost all of the banks wherein were these alleged trust accounts. But touching a similar course in Williams v. Bank, supra, we said: "But the argument, at best, is speculative upon a possible motive. * * * It is available in every case where the depositor's own funds in the same bank have reached the limit. It has not received much consideration where the depositor has named a beneficiary of the trust. Mabie v. Bailey, 95 N. Y. 206, 210, 211; Decker v. Savings Institution, 15 App. Div. 553, 555, 44 N. Y. Supp. 521." Though he went far to exhaust the number of savings banks, there were some still open to him.

The learned counsel for the appellants urges that the accumulations of interest, both on the testator's individual accounts and on the accounts in suit, were deposited by the testator in his business account in the Union Trust Company, indiscriminately, where they drew 2 per cent. interest on daily balances, and, on the arrival of a new interest-bearing period in the savings banks, such accumulations were redeposited in the savings banks, and that when the rate of interest in the trust company was reduced he drew therefrom to swell the various accounts in the savings banks. Even so, this is but evidence that the individual, and the trustee as well, manipulated both his own money and the trust money so as to obtain the largest gains. Now, the times named by the learned counsel for advantageous deposits in savings banks are January 1st–10th, April 1st–3d, July 1st–10th, and October 1st–3d; and it appears that the account of the testator in the said trust company showed these successive balances, namely: 1897, July 30th, $15,548; December 6th, $15,880. 1898, February 2d, $24,102; August 3d, $27,065. 1899, February 24th, $28,500. This does not sustain the appellants' theory. But, in any event, neither the retention of the pass book nor the drawing of the interest detracts from the character in which the testator held these deposits, or "throws light" on the original transaction. Willis v. Smyth, 91 N. Y. 297, 300; Robertson v. McCarty, supra, and authorities cited.

Several memoranda written by the testator were read in evidence, and it is contended that it is thus shown that the testator made no

discrimination between his individual and his trust accounts. This is necessarily true so far as those memoranda are concerned, because they contain nothing but a list of banks, with certain sums set opposite to them, respectively. They bear no dates. They contain neither note of explanation nor of connection. Why they were written, or when, does not appear. They afford food for speculation, and ground for guesswork, but are, at most, mere isolated items. The most that can positively be said is that some time the testator set down the names of certain banks, and certain sums of money opposite thereto.

The cases of Pirnie and Schuleman against these defendants, which were argued at the same time, present similar features, save that they are strengthened by the sister Augusta Meislahn, who, in the first case named, testified that on one occasion, when her father was "fixing the interest," she saw the deposit books in his possession in his house. He said: "This money I have in trust for you girls, but you cannot get it now, and when I am dead nobody can get this from you." She further testified that she had seen the books about twice a year, and that she had seen them shortly before her father died. This testimony was substantially repeated in the second case, with the additional statement that the witness had seen the books in July, 1899. The exception to this testimony as incompetent, under section 829 of the Code of Civil Procedure, is not well taken. The evidence was not offered on her behalf or in her interest. The defeat of the plaintiffs meant the increase of the estate, to her benefit as one of the general devisees under the will. The fact that she had a separate action against the defendants, in which she sought to establish her title to certain other bank books, did not place her within the prohibition of the statute. Rix v. Hunt, 16 App. Div. 540, 549, 44 N. Y. Supp. 988, and authorities cited; Baxter v. Baxter, 13 App. Div. 65, 67, 43 N. Y. Supp. 94. The judgment must be affirmed.

Judgment affirmed, with costs. All concur.