(Supreme Court, Appellate Division, Second Department. February 15, 1902.)

1. EXECUTORS — FINAL ACCOUNTS—REFERENCE—PROCEEDINGS BEFORE SURROGATE—FINDINGS.

Code Civ. Proc. § 2545, provides that on the trial of an issue of fact before the surrogate he must file his decision in writing, stating the facts and conclusions of law separately. Section 2546 provides that in special proceedings the surrogate may appoint a referee, whose report shall be subject to confirmation by the surrogate, the referee having the same powers as a referee appointed by the supreme court for trial of an issue of fact. Section 1022 provides that a referee on the trial of issues of fact may separately state the facts and conclusions of law, or may concisely state the grounds upon which the issues have been decided. The issues on a contested settlement of an executor's acc unt were referred. and the referee reported his decision without making separate findings, and his decision was confirmed by the surrogate. *Held*, that the report of the referee was authorized, and the surrogate was only required to confirm it, and not to make separate findings of fact and conclusions of law.

2. REFEREE—EXCEPTIONS TO REPORT—APPEAL.

Under Code Civ. Proc. § 1022, providing that when judgment is entered on the report of a referee, which does not state the findings of fact and conclusions of law separately, the defeated party may except thereto, in which case the appellate division of the supreme court may review on appeal all questions of law and fact, a general exception to a short decision authorizes the review of the entire procedure and evidence.

3. EVIDENCE—ADMISSIONS AGAINST INTEREST.

Written instruments in the handwriting of testator, containing admissions against his interest and in favor of his executor, are admissible on behalf of the latter on an accounting, though not signed by the testator.

4. WITNESSES—TRANSACTIONS WITH DECEDENT—INCOMPETENCY.

The motion to strike out all testimony of the witness as being incompetent under Code Civ. Proc. § 829, is properly denied where a portion of it is competent.

5. SAME.

Evidence by the executor that while acting as agent of the testator, before the death of the latter, deeds to lands purchased were sometimes taken in the father's name and sometimes in the name of other members of the family, is not as to a personal transaction with deceased, and incompetent, under Code Civ. Proc. § 829.

6. SAME.

A beneficiary under the will is not incompetent, under Code Civ. Proc. § 829, to testify to personal transactions with the testator in behalf of other beneficiaries, who object to such accounts, though her own interest in the estate may be affected by her testimony.

7. SAME.

An executor, on the hearing of objections against his account, testified as to portions of certain transactions with testator. *Held*, that the admission of such testimony by the executor rendered the testimony of beneficiaries competent as to such transactions under Code Civ. Proc. § 829.

8. SAME.

Evidence as to the declarations of testator that he had abandoned control of certain lands for taxes, and that he had agreed with his son that the latter might redeem the lands, and receive one-fourth of them for his services, is admissible, in the trial of objections to the final account of the son as executor of the father, as a declaration against interest, and is not inadmissible as hearsay.

Appeal from surrogate's court, Orange county

In the matter of the judicial settlement of the account of Francis W. Woodward as executor of the estate of William A. Woodward, deceased. From a decree settling the executor's accounts, and from orders denying motions made by contestants, the contestants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hector W. Thomas, for appellants.
R. C. Coleman, for respondent.

GOODRICH, P. J. William A. Woodward died in 1883, leaving a will, in which he appointed executors, one of whom, Francis W. Woodward, qualified. In 1898 the executor filed a petition with the surrogate of Orange county for the judicial settlement of his accounts. Accompanying the petition was a verified account. At that time there were surviving the testator a widow, two sons, two daughters, and eleven grandchildren. The widow, one of the daughters, and four of the grandchildren appeared, and filed objections to the account. Mrs. Frances M. Woodward, the widow, died in 1900, leaving a will, and the United States Mortgage & Trust Company, as executor, was substituted in her place as contestant. After two hearings before the surrogate, the account was referred to William Van Namee, Esq., who was "appointed referee to examine said account, and hear and determine the questions arising upon said objections and the settlement of said accounts." The order also directed that the accounts, objections, vouchers, and testimony of the executor taken before the surrogate, and such other files of the court as related to the matter, should be delivered to the custody of the referee, who was directed to make report of his proceedings and determination to the court. The accounting thereafter proceeded before the referee, who filed a paper, which was therein termed "Decision of Wm. Van Namee, Referee," and in which he decided that certain items of the executor's accounts should be disallowed for various reasons, and directed that the executor charge himself with such items, and "that the account filed by him, as thus modified, be and it is passed, approved, and sustained. Decree should be entered accordingly, and costs and disbursements of the executor and of the contestants should be paid out of the estate." This was only July 23, 1900. In September the contestants moved the surrogate's court for an order directing that the referee's report be sent back to him "for correction, and further directing the said referee to state separately therein the findings of fact and conclusions of law." The court denied the motion on the ground that the report was in accordance with the provisions of the Code of Civil Procedure. It also entered an order confirming the report, and the decree thereon was entered in January, 1901. Subsequently another motion was made by the contestants to set aside the decree on the same grounds, and this motion was also denied. The contestants appeal from such decree and the two orders.

The appeals from the two orders are based on the contention that by section 2545 of the Code of Civil Procedure the referee was required to state separately the findings of fact and the conclusions of law. That section relates to trials before the surrogate of any issue of fact. The petition and objections constituted an issue of fact. Section 2545 provides that "upon such a trial the surrogate must file in his office his decision in writing, which must state separately the facts found and the conclusions of law." If the trial, which was commenced before the surrogate, had continued to a final decree, there could be no question that he would have been required to comply with the provisions of section 2545. But it is claimed that, as the matter was referred, the conditions are those governed by section 2546. That section provides that in a special proceeding other than one instituted for the probate or revocation of probate of a will the surrogate may appoint a referee, among other things, "to examine an account rendered; to hear and determine all questions, arising upon the settlement of such an account, which the surrogate has power to determine; and to make a report thereon; subject, however, to confirmation or modification by the surrogate. Such a referee has the same power  *  *  *  as a referee appointed by the supreme court, for the trial of an issue of fact in an action; and the provisions of this act, applicable to a reference by the supreme court, apply to a reference, made as prescribed in this section, so far as they can be applied in substance without regard to the form of proceeding." Section 1022 provides that the report of a referee "upon the trial of the whole issues of fact may state separately the facts found and the conclusions of law, and direct the judgment to be entered thereon, or the  *  *  *  referee may file a decision stating concisely the grounds upon which the issues have been decided, and direct the judgment to be entered thereon.  *  *  *  Where the costs are in the discretion of the court the  *  *  *  report must award or deny costs," etc. Although the hearing was commenced before the surrogate, I have no doubt that he intended to, and did by the terms of the order, refer the whole issues involved in the accounting to the referee. Under section 1022, therefore, the referee was authorized to file a short decision, which stated concisely the grounds upon which the issues were decided; and the decision of the referee complies with that provision.

But this does not entirely dispose of the question whether, upon the coming in of the referee's report, the surrogate was required to comply with the provisions of section 2545, and file in his office his decision in writing, stating separately the facts found and the conclusions of law. I think he was not bound to do so. The matter is governed by section 2546, and not by section 2545. Section 2546 expressly makes the referee's report "subject to confirmation or modification by the surrogate." In analogy the practice in the supreme court on the coming in of the report of a referee upon reference of issues of fact, where there is a short decision, is not to state separately in the order or final judgment the findings of fact and the conclusions of law, but simply to enter an order confirming the report, which in effect, makes the referee's decision that

of the court. The decree of the surrogate contains a statement that the surrogate, having examined the account, vouchers, and report, orders that said report be confirmed, and that the surrogate "finds the state and condition of the said account to be stated and set forth in the following summary statement thereof, made by the said surrogate, as finally settled and adjusted by him, to be recorded with and taken to be a part of the decree." The contestants did not, upon the settlement of the case, request a finding upon any question of fact or a ruling upon any question of law. The executor, however, did request the referee to find upon questions of fact and for rulings upon questions of law, upon which the referee acted; and to all the findings and all the conclusions of law the contestants excepted.

Recurring to section 1022, we find the provision that, where the judgment is entered on a short decision, the defeated party may file an exception to such decision, in which case, on the appeal upon a case containing exceptions, the appellate division shall review all questions of law and fact, and may modify or affirm the judgment, or grant to either party the judgment which the facts warrant. This brings us to a consideration of the proceedings and the evidence, in order that we may decide whether to modify or affirm the decree. Here we are assisted by the decision of the referee. He surcharges the executor with a number of items, each exceeding $20, because vouchers were not presented in accordance with section 2729 of the Code of Civil Procedure. After disallowing these items, the referee found that "the proof establishes the correctness of the account filed by the executor in all other respects," and that such account thus modified is "passed, approved, and sustained." The referee, in his decision, refers to the complicated character of the accounts and transactions extending over a long period. He finds that the executor has acted in entire good faith, and for the best interests of the estate; that certain irregularities have been acquiesced in by the parties interested, and have not resulted in any loss to them or to the estate. As there was evidence to support these conclusions, and none was offered to impeach the accounts, we do not deem it necessary in this opinion to analyze the evidence. In adjusting the accounts of executors the surrogate's court is governed by principles of equity as well as of law, and it is at all times competent for the executor, unimpeded by technical rules, to show the fairness of his dealings, the real nature of his transactions, and the amount for which he should be held liable. Redf. Sur. Prac. 778. See, also, In re Wagner's Estate, 119 N. Y. 28, 23 N. E. 200, where, at page 31, 119 N. Y., and at page 200, 23 N. E., Judge Gray said:

"The general jurisdiction conferred upon the surrogate's court in matters relating to the conduct of executors and administrators would seem meaningless, if not an absurdity, if it did not comprehend the right to decree intelligently, and upon equitable principles, and to order their conduct upon principles of justice and of reason."

After a very careful examination of the entire evidence, we agree with the referee's conclusions of fact and law.

The appellants contend that it was error to admit a paper relat-

ing to the ownership of certain lands in Wisconsin. The paper was in the handwriting of the testator, and was found among his papers, as conceded by the appellants' brief. No objection was made at the time of its admission, but a motion to strike it out was made and denied at a later hearing. This paper contains a description of the Richland and Vernon lands, and is headed, "F. M. Woodward, one-half; Mary N. Putnam and F. W. Woodward, each one-quarter." It also contained an entry of sales of some of the parcels to various persons. It was material evidence, as an admission or declaration of the testator, to show the correctness of his books and the executor's accounts, in one item of which the testator charged himself with an indebtedness to the three persons interested in the lands. This paper was not subscribed by the testator, but is in his handwriting, and is corroborative of testimony as to the arrangement between the executor and his father, and also of entries in the testator's ledger, portions of which were in evidence. The paper was an admission of the testator against his own interest. It may not be conclusive evidence, but within the equitable rules which govern the admission of evidence in proceedings of this nature in surrogates' courts we think it was admissible.

The appellants contend that there was error in the admission of evidence contrary to the provisions of section 829 of the Code of Civil Procedure. It appeared by the testimony of Francis W. Woodward, the executor, received without objection, that previously to the death of his father, the testator, he (Francis), while living in Wisconsin, had been operating in lands there for his father, who lived in this state. He was then asked: "And when you made purchases there for him, in whose name were the deeds taken?" The answer was admitted over the contestants' exceptions: "They were taken in various names. Sometimes in father's name, and sometimes in other members of the family." Subsequently the contestants moved to strike out "the testimony of Francis W. Woodward, the executor, heretofore given, in regard to the Richland and Vernon lands, upon the ground that it was improper and incompetent, and that the witness was precluded from testifying under section 829," etc. The objection was not specifically pointed to the answer relative to the deeds, but to all the testimony of Francis relative to those lands, some of which testimony had been received without objection. The objection was too broad, as some of the evidence was not subject to the prohibition of section 829. It will be observed that no objection had been made to the testimony that the witness had been operating in the lands for his father. That might possibly have been excluded if objection had been made, but the testimony that he had taken the deeds in various names did not necessarily involve any personal transaction or communication between the son and his father, though it may have had a remote connection therewith. A reasonable test of the rule excluding testimony under section 829 is whether the deceased, if living, could have contradicted the testimony offered. How can it be said that the deceased could have contradicted the simple fact that the deeds "were taken in various names, sometimes in father's name and sometimes in other

members of the family"? This fact was susceptible of contradiction by the production of the deeds or the record, but no such offer was made, and, as the objectors had permitted testimony to be given without objection as to the operations in lands by Francis for his father, it may well be questioned whether they had not waived their privilege under section 829,—whether they could lie by, and, after permitting the reception of evidence of a part of a transaction which was to their benefit, object to the admission of evidence showing a consummation of the operation, when it was not shown that the evidence related to some actual personal transaction or communication with his father, or to a transaction which occurred in the presence of the father. We think that the admission of the testimony was not in violation of section 829.

Mrs. Putnam, one of the daughters, was asked whether her father had said anything to her about the Wisconsin lands, and, being asked what the conversation was, objection was made that this was a personal transaction with the deceased, and inadmissible. The objection was overruled, and the contestants excepted. Subsequent motions were made to strike out, on the ground that the witness still receives under the will the income of three-ninths of the residuary estate, and is disqualified under section 829. These motions were denied, and exception taken. Section 829 excepts from its operation a case where the executor is examined in his own behalf concerning the same transaction or communication. In this case the executor had then been examined. The testimony of Mrs. Putnam was therefore admissible by the letter of the section. But we must look beyond the letter to ascertain the purpose of the statute and the exception. The purpose of the statute is that, where a party is interested in the event of an issue, he should not be examined as a witness in his own behalf or interest as to a personal transaction with a deceased person, where his testimony may inure to his own benefit, unless the other party to the pending controversy has testified concerning the same matter. Excising all of the section which does not relate to the present condition, it reads:

"Sec. 829. Upon the trial * * * of a special pr ceeding, a party or a person interested in the event * * * shall not be examined as a witness, in his own behalf or interest, * * * against the executor * * * of a deceased person, * * * or a person deriving his title or interest from, through or under a deceased person, * * * concerning a personal transaction or communication between the witness and the deceased person, * * * except where the executor * * * so deriving title or interest is examined in his own behalf, * * * concerning the same transaction or communication."

It is true that Mrs. Putnam was interested in the event, as her income in three-ninths of the residuary estate might have been increased or diminished by the fact whether or not the lands in Wisconsin belonged to the estate; but the interests of some of the other contestants might also have been increased or diminished by her testimony. Consequently she was examined as a witness, not exclusively in her own interest, against a person deriving his interest through the testator. She was examined as a witness against the executor; that is, against the estate which he represents. On the

other hand, her testimony shows that her examination tended not to increase her share, but in fact to diminish it. Her share might have been increased if the executor's account had been impeached in the particular matter investigated. But the executor offered her evidence to sustain his account, not only as regarded her interests, but to sustain it as against other contestants, and to this extent her testimony was admissible, even though the statute forbids the examination of a person or a party in his own interest or behalf, in the event of the investigation, as to any communication had by the witness with the deceased. The claims of the contestants were independent, and the testimony was admissible in support of the claims in which the witness had no interest. See Meislahn v. Meislahn, 56 App. Div. 566, 67 N. Y. Supp. 480.

Still the other question remains. The executor, on his own behalf, had been examined, without objection, as to parts of the same transaction or communication. This would seem to create the exceptional condition of the section that, where an executor had been examined on his own behalf in regard to a transaction, the statute does not forbid the examination of such a witness as Mrs. Putnam to prove personal transactions with the deceased.

Objection was also made to testimony given by George W. Woodward, another son of the testator. This witness was in no way interested in the estate, as he had received his share of the estate, and had executed a general release to the executor. He testified to the statements made by his father, the testator, as to the Wisconsin lands, that he had abandoned them for taxes, but that Francis, the executor, wished to redeem the lands, and take care of them, and that he had agreed with him that he might do so, and receive one-quarter of the profits for his services, giving one-quarter to Mrs. Putnam and one-half to the mother. It is not argued in the brief of the appellants that this evidence was open to objection under section 829, but that it was hearsay. We do not think the testimony was open to this objection. It related to an admission made by a party interested against his own interest, and on this ground was clearly admissible.

A careful examination of the record leads irresistibly to the conclusion that the referee and the surrogate committed no errors which require a reversal of the decree, and it is affirmed, with costs against the appellants. All concur.