## SUPREME COURT.

CAROLINE M. WEBER agt. LEWIS WEBER and others.

*Voluntary trusts — when they will not be enforced.*

Where a father deposited his earnings in a savings bank, in his own name, as trustee for his children severally, in sums to draw the largest interest, but, under circumstances which make it clear that he did not intend thereby to part with his ownership of, or interest in, the moneys, or the right to control the same:

*Held,* that no such trust was created by such deposit, in favor of the children, as would enable them to take the same from the control of their father.

Also, that whether a trust was created was a question of fact, in determining which the court would give effect to the purposes and objects which the settler had in view in making the deposits.

*Special Term, November,* 1879.

*G. L. Wilkes,* for plaintiff.

*Cook* and *Schuck,* for defendants.

VAN VORST, *J.* — The question involved in this action is important, but it was my impression at the close of the trial that the action could not be maintained, under the evidence, and reflection since has confirmed that idea.

The pass books of the savings bank, issued to the defendant on the deposit by him of his own money, afford the only evidence to establish the trust contended for. But the circumstances under which the accounts were opened do not lead to the conclusion that the defendant intended absolutely to part with his title and ownership of the moneys in question, and I do not think he has.

Whether a voluntary trust or settlement is created or not, is a question of fact in each case, and the court, in determining the fact, will give effect to the purposes or objects which the settler had in view in making the disposition (*Perry on Trusts, sec.* 99 ; *Jones* agt. *Locke, L. R.,* 1 *Ch.,* 25).

Under the case of *Martin* agt. *Funk,* in the court of appeals, the opinion in which, delivered by the chief justice, has been handed up, upon a consideration of the bank books only, and the form in which the deposits were made, the trust would doubtless be established. But the learned chief justice says, that he had considered the case upon what appears upon the face of the transaction, without evidence bearing upon the intent, and I understand him to say, " that surrounding circumstances may be shown to vary or explain the apparent character of the acts, and the intent with which they were done."

Weber agt. Weber and others.

In *Jones* agt. *Locke* (*supra*) lord CRAMWORTH said: " The case turns on the very short question, whether the father intended to make a declaration that he held the property in trust for the child." The intent, therefore, of the defendant, at the time he made the deposits, gathered from his words and acts, together with the circumstances under which the deposits were made, must needs be considered, to determine the true character of the transaction.

The moneys which the defendant deposited in the savings bank, apparently in trust for his children, had been earned through many years by his own labor, and were the results of savings begun, as to a portion of it, when he was fifteen years of age.

The deposits are entered in four separate books, all issued by the same savings bank. In one book the form of the entry is "Lewis Weber, in trust for Caroline M. Weber;" in another, "Lewis Weber, in trust for Carrie M. Weber." The remaining books contain similar entries in favor of Weber, in trust for two other children. Defendant, upon the trial, gave, in substance, the following account of the origin of these separate deposits, and the reasons for making them : The money, some $800 in gold, which he had before deposited in Philadelphia, where he had saved it, was sent to him in New York, and he took it to the " Bank for Savings," desiring to deposit it for safe-keeping. The bank clerk told him that he must divide up the amount and keep it in separate sums, under $500, and it would draw more interest. Defendant thought of different names in which to place it, his father, his mother, and finally deposited in his own name, in trust for his children, and it has so remained ever since. He wished the bank to understand that it was his money, and was informed that it was his, no matter in whose name it was deposited. He stated that he did not wish to place it in anybody's name, but had no objection to letting his children have it after his death; but he wanted to keep it in the bank, he, however, to control it so long as he lived. Some

of the moneys deposited he afterwards drew out, and he redeposited other moneys. The moneys, which now reach the aggregate sum of $2,000 in the four books, to which should be added interest for several years, have been accumulating in this way for a period of twenty-seven or twenty-eight years, during which period the books, when written up, have been from time to time renewed by him.

An unhappy separation seems to have taken place in the family. The defendant's wife and two of the children refuse to live with him, the other child remains with him. The origin of this unfortunate condition does not clearly appear, and perhaps it would throw no light upon the legal question if known. The defendant testifies that he has applied to his wife to live with him, and that she has refused.

One of the daughter's, an adult, has already prosecuted her father to recover the money so deposited in trust for her. But it did not seem to the judge before whom the trial was had, that she was entitled to the money, and that the evidence did not establish that the defendant intended to create a trust in favor of the daughter by the deposit of the moneys in the savings bank.

An application has also been made in the court of common pleas for the removal of Weber, the defendant, as trustee, upon similar grounds to those urged in this action; but the learned chief justice of that court doubted whether there was that complete and perfect declaration of trust in favor of the children which was irrevocable, and made Weber thereafter simply a trusteee for the children; and the application was denied upon the grounds that the uncontradicted statements were not sufficient to justify the court in holding that such a trust was established as the applicant claimed.

Finally, this action is commenced by the plaintiff, one of the daughters, who is an infant, by her mother as her guardian, who claims that the defendant holds the moneys in trust for her benefit; that he is pecuniarily irresponsible; that he be removed and a new trustee be appointed in his place, who

shall invest the money for her benefit. A similar action is pending in this court in behalf of the other daughter.

Upon consideration of all the evidence, and by giving effect to the intentions of Weber in making the deposits, and the reasons expressed at the time the same were made, I cannot conclude that Weber absolutely deprived himself of the moneys, or the right to control and use and apply the same at his volition.

If the literal construction of this transaction, as presented by the entries in the bank books, establish an irrevocable trust in favor of the children, the same is the result of a mistake upon the part of Weber, to which, in equity, he should not be held.

It is unreasonable to suppose that Weber should intentionally strip himself of all his money, the fruits of his daily toil during his previous life, and place it wholly beyond his reach to supply therefrom his own wants when lack of employment, sickness or advancing years might deprive him of the means of supporting himself and family, and constitute himself simply a trustee for his children over his own means, thus putting himself entirely dependent upon their continued affection or generosity. Equity will not aid children in the attempts to impoverish a parent, and would reluctantly enforce a voluntary trust by which the settler would be wholly denuded although his children are the beneficiaries.

I have no idea that Weber supposed that, by making the deposits in the form in which they were made, he was putting it in the power of his wife and children, by ceasing to live with him, to prosecute him for the money, or to apply to the courts to deprive him of its control.

As a ground for removing him from the position of trustee, in which it is claimed by the plaintiff that defendant has placed himself, it is urged that he is pecuniarily irresponsible. If that be so, it is because he has voluntarily given away these moneys; and it is scarcely kind in the beneficiaries to urge this as a reason for depriving him of the control of that which

he had the industry to earn and the prudence to save, and which his affection for his children even now compels him to say they shall have at his death.

Upon the facts of this case I do not think the trust is established, and I conclude that the plaintiff is not entitled to the relief demanded, or any relief in the premises, and that her complaint be dismissed upon the merits.