(51 Misc. Rep. 375.)

## In re KING'S WILL.

(Surrogate's Court, Rensselaer County. August, 1906.)

1. TRUSTS—EVIDENCE TO ESTABLISH—DEPOSIT IN BANK.

Where a person deposits money in a bank in trust for another, and dies, and there is evidence that the depositor stated that she intended the moneys to be for the benefit of the person in whose name it was put in trust, and such intention is consistent with the scheme of her will, a trust is established.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 44.]

2. SAME.

Where money is deposited in a bank in trust for another, with the statement, "subject to the control of" the depositor, and the depositor has declared that she intended the money to be for the benefit of such person, it is sufficient to establish a trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 44.]

3. SAME.

A deposit, with an entry in the book signed by the depositor, "In case of my death pay to the order of (for her own use) E. H. only," coupled with admissions of the deceased depositor, is sufficient to establish a trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 44.]

4. SAME.

Where an indorsement on an envelope containing bonds indicates an intention to make a gift, and it fails for want of delivery, the court cannot construe the transaction as a trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 53.]

In the matter of the judicial settlement of the account of the executors of Charlotte E. King. Decree rendered.

E. W. Douglas, for executors.

Ezra Tiffany, special guardian.

George W. Donnan, for Amelia E. Haswell, individually.

Jarvis P. O'Brien, for Jennie Beckwith and Jane Brazee.

Eugene McLean, for Mary Horan and Celestia Parrow.

John W. Roddy, for Charles W. Gunnison.

Ezra Tiffany, for Joseph Mark Haswell, Harriet M. Warren, and Emma A. Harvie.

HEATON, S. On this judicial settlement the executors claim as assets of the estate six bank books and four bonds, while such bonds and two bank books are claimed by Miss Amelia E. Haswell, one by Joseph M. Haswell, one by Charles W. Gunnison, one by Mrs. Emma A. Harvey, and one by Harriet J. Warren, all of whom are residuary legatees and parties to this accounting. These claims are made upon

the ground that the testatrix in her lifetime set apart the sums of money so deposited and such bonds as trusts for the use and benefit of such persons. Evidence of a large number of witnesses was taken in behalf of the claimants, from which these general facts are established:

Mrs. King was a widow without descendants, her nearest next of kin being nephews and nieces. She left an estate of the value of upwards of $125,000. In 1901 she made her will, in which she names more than 20 persons as legatees in sums varying from $1,000 to $8,000. The scheme of this will throws some light upon the intention of the testatrix as to the ultimate disposition of her estate. The sum of $8,000 seems to be the amount fixed in her mind as the uniform share to be received by each nephew and niece. To her niece Celestia Parrow she gives $8,000, to her niece Mary Horne she gives $8,000, to her nephew Eugene Brazee she gives $8,000, to her nephew Frank Wiskie she gives $8,000, and to her nephew Charles M. Wiskie she gives $8,-000; all of these being nephews and nieces who did not reside in her near vicinity or with whom she did not have particularly affectionate intercourse. Her remaining nephews and nieces are the claimants, and the evidence shows that she was particularly interested in them and in their welfare, and that for various reasons, which she often mentioned, their comfort and maintenance was a source of much anxious thought on her part. Their legacies are as follows: Amelia E. Haswell, $6,-000; Joseph M. Haswell and son, $5,500; Harriet J. Warren, $5,000; Emma Harvey, $5,000; Charles W. Gunnison, $6,000.

Without any additional provision for the benefit of these nephews and nieces, in whose welfare Mrs. King was particularly interested, they would appear to be discriminated against, instead of being favored, in the will. It is evident, then, from the scheme of the will, as well as from the direct evidence of many witnesses, that, when Mrs. King made her will in 1901, she considered that she had in a measure already provided outside of the will for these nephews and nieces. If such provisions so intended to be made by her can be given effect, all of the nephews and nieces share in the estate in about equal proportions with the exception of Miss Haswell, who, according to the evidence, testatrix intended to give a greater share of her property than she gave to any of the others. The evidence discloses that Mrs. King was especially interested in Miss Haswell, because she had chosen to devote her life to the poor of the city of Troy, and because she would possibly be blind in her old age, and therefore desired to do more for her than for the other next of kin, and that as to the other claimants she had in each case special and peculiar reasons why she felt that she ought to provide a fund for their immediate use upon her death.

Mrs. King seems to have heard, during the last 10 years of her life, of one or more wills failing of proof, and of one or more instances where the law did not permit the distribution of the estates according to the supposed intention of the deceased. These reasons, with others, apparently induced the testatrix to set apart certain sums of money in the nature of bank deposits for the benefit of certain persons. She began this practice as early as 1893, in which year she opened the Harriet J. Warren account. In 1899 she opened the Charles W. Gunnison ac-

count and established the Emma Harvey account. In 1900 she opened the Joseph M. Haswell and one of the Amelia Haswell accounts. In 1903 she established the second Amelia E. Haswell account. None of these accounts bears evidence of being her ordinary personal account, as no withdrawals of principal were made from any of the accounts and in some of them the interest was allowed to accumulate so that, with the deposits, the account stood, at the death of the testatrix, at $3,000. It appears, also, that these deposits were not deposits in the names of others for the purpose of convenience in drawing money, or for the purpose of evading the by-laws of savings banks regarding payments of interest. Abundant evidence is given of the admissions and declarations of the testatrix that she had set apart in bank deposits sums of money for certain of her nephews and nieces, that such money so set apart was wholly for their benefit, that she no longer held it as her money, but as their money, and that she had reasons which to her mind were good and sufficient why she should so set apart these funds. The scheme of her will, made in 1901, after all but one of these accounts had been established, is strictly in accordance with such admissions and declarations made from time to time while her plans for the disposition of her property were being formed, and such will appears to be a completion and culmination of such plans.

It only remains to discover whether such intentions are capable of being legally effectuated. It is well settled that a trust in personal property may be created by parol, and that no particular form of words is necessary for its creation; but the words or acts relied upon to effect that object should be unequivocal and plainly imply that the party making them intended to divest himself of his interest in the property and to hold it thereafter for the use and benefit of the others. Barry v. Lambert, 98 N. Y. 300–306, 50 Am. Rep. 677. The acts must be of that character which will admit of no other interpretation than that such legal rights as the settlor retains are held by him as trustee for the donee. The settlor must either transfer the property to the trustee or declare that he holds it himself in trust. Wadd v. Hazelton, 137 N. Y. 215–219, 33 N. E. 143, 21 L. R. A. 693, 33 Am. St. Rep. 707.

There is no qeustion that by the law of this state, whenever a deposit is made in a savings bank by a person in his own name in trust for another person, and there are no circumstances rebutting the presumption, it will be conclusively presumed that the depositor has divested himself of the legal and beneficial title to the fund, and has vested himself with the legal title as trustee for the person named as cestui que trust. Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446; Boone v. Citizens' Savings Bank, 84 N. Y. 83, 38 Am. Rep. 498; Willis v. Smyth, 91 N. Y. 297; Mabie v. Bailey, 95 N. Y. 206; Fowler v. Bowery Savings Bank, 113 N. Y. 450, 453, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; Beaver v. Beaver, 117 N. Y. 421, 423, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531. But it is clearly established that when the depositor does not made the deposit in trust with the intention of giving to the person named as cestui que trust any beneficial interest in the fund, but for his own benefit, he does not divest himself of his legal title to the deposit, but continues to be the beneficial owner thereof, notwithstanding the form of the deposit.

Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641; Weber v. Weber, 58 How. Prac. 255; Mabie v. Bailey, 95 N. Y. 210; Lakeside Paper Co. v. State, 78 N. Y. St. Rep. 231, 44 N. Y. Supp. 281. The depositor may retain the bank book, and even may draw the interest on the trust fund, without destroying the character of the trust, where one has been established. Willis v. Smyth, 91 N. Y. 297; Grafing v. Heilmann, 1 App. Div. 260, 37 N. Y. Supp. 253, affirmed, 153 N. Y. 673, 48 N. E. 1104; Robertson v. McCarty, 54 App. Div. 103, 66 N. Y. Supp. 327. The fact that the money was to go to the beneficiary only at the death of the maker of the trust does not make it testamentary disposition; the interest of the claimant being vested at the time of the deposit. Grafing v. Heilmann, supra; Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257; Carnwright v. Gray, 127 N. Y. 93, 27 N. E. 835, 12 L. R. A. 845, 24 Am. St. Rep. 424.

The evidence in this case fully meets these requirements. There being sufficient evidence to establish the deposits as trusts generally, let us consider each individual case. One account in the Albany Savings Bank was opened as follows: "Mrs Charlotte E. King, in trust for Amelia E. Haswell, her niece." It consisted of a single deposit made July 10, 1900. Another account in the same bank was opened in the name of "Mrs Charlotte E. King, in trust for Charles W. Gunnison, her nephew," and consisted of a single deposit made July 19, 1899. Another account in the same bank was in the name of "Mrs. Charlotte E. King, in trust for Joseph M. Haswell, her nephew," and consisted of a single deposit made July 10, 1900. Under the decision in Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, the form of these deposits alone would constitute them trusts at the death of Mrs. King even without the benefit of the affirmative evidence which this case contains. Where there is evidence other than the form of the deposit showing an intention to create a trust, the Totten Case does not limit the trust to a tentative one; but, when the facts warrant it, the trust should be consrued as irrevocable. O'Brien v. Williamsburg Savings Bank, 101 App. Div. 108, 91 N. Y. Supp. 908. The account in the Troy Savings Bank stood in the name of "Harriet J. Warren, subject, also, to the control of Aunt Mrs. Charlotte E. King." This account was opened June 20, 1903, and consisted of several deposits, which, together with some accumulations of interest, made the account practically $3,000 at the date of the death of Mrs. King. Another account in the Security Trust Company of Troy stood in the name of "Amelia E. Haswell, subject, also, to Charlotte E. King." It was opened in 1903, and consisted of several deposits, which aggregated substantially $3,000. It has been held that this form of deposit constitutes a trust as fully and completely as the reverse form. Millard v. Clark, 80 Hun, 142, 29 N. Y. Supp. 1012. Supplemented by the clear and unequivocal evidence to be found in this case, these accounts also became valid as trusts.

The account claimed by Mrs. Emma Harvey was opened in the bank of D. Powers & Sons, Lansingburg, in the name of Mrs. Charlotte E. King, in 1895. Three deposits were made, aggregating $3,000. July

11, 1899, Mrs. King took the book to the bank, and after a consulta-
tion with the bank officers had written in the bank book the following:

"In case of my death pay to the order of (for her own use) Mrs. Emma
Harvey only.                       ·              [Signed]   Charlotte E. King."

An order to the same effect was filed with the bank. It is doubtful
if this form of deposit, standing alone, would have created a trust; but
in this case we are not confined to the inscription on the book or to
the terms of the order for the evidence upon which to determine that
a trust was intended and was created. There is testimony in the case
from a number of witnesses as to the admissions and declarations of
Mrs. King as to this account, from which we must find that she estab-
lished this deposit as a trust deposit as fully and unequivocally as
she established the others.

As to the bonds claimed by Miss Haswell, the evidence seems to
come far short of establishing a trust. The indorsements on the
envelope and on the bonds indicate an intention to make a gift, and not
to constitute a trust. Where an intended gift fails for want of de-
livery, the court cannot supply such a defect by construing the trans-
action as a trust. Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634;
Matter of Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71.

Decreed accordingly.